EXHIBIT 1

THIS CONVERTIBLE PROMISSORY NOTE AND THE MEMBERSHIP INTERESTS ISSUABLE UPON CONVERSION THEROF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "***SECURITIES ACT***"), OR UNDER THE SECURITIES LAWS OF APPLICABLE STATES. THIS CONVERTIBLE PROMISSORY NOTE AND THE MEMBERSHIP INTERESTS ISSUABLE UPON CONVERSION THEROF ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION UNDER SUCH LAWS OR AN EXEMPTION FROM SUCH REGISTRATION REQUIREMENT. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME. THE ISSUER OF THIS CONVERTIBLE PROMISSORY NOTE MAY REQUIRE AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE ISSUER TO THE EFFECT THAT ANY PROPOSED TRANSFER OR RESALE IS IN COMPLIANCE WITH THE SECURITIES ACT AND ALL APPLICABLE STATE SECURITIES LAWS.

$100,0000

February 2, 2015

For value received, PRIDEWEAR, LLC, a Delaware limited liability company (the "Company"), promises to pay to Kim Hammond (the "Holder"), the principal sum of $100,000 Thousand Dollars. Interest shall accrue from the date of this Note on the unpaid principal amount at a rate equal to eight percent (8%) per annum. This Note is one of a series of Convertible Promissory Notes containing substantially identical terms and conditions issued pursuant to that certain Convertible Promissory Note Purchase Agreement dated March 21, 2014 (the "Purchase Agreement"). Such Notes are referred to herein as the "Notes," and the holders thereof are referred to herein as the "Holders." Capitalization terms used by not defined herein shall have the meanings ascribed to them in the Purchase Agreement. This Note is subject to the following terms and conditions.

1. **Maturity.** Unless converted as provided in Section 2, this Note will automatically mature and be due and payable upon written demand following the two (2) year anniversary of the Initial Closing (as defined in the Purchase Agreement, the "Maturity Date"). Subject to Section 2 below, interest shall accrue on this Note but shall not be due and payable until the Maturity Date. Notwithstanding the foregoing, the entire unpaid principal sum of this Note, together with accrued and unpaid interest thereon, shall become immediately due and payable upon the execution by the Company of a general assignment for the benefit of creditors, the filing by or against the Company of a petition in bankruptcy or any petition for relief under the federal bankruptcy act or the continuation of such petition without dismissal for a period of ninety (90) days or more, or the appointment of a receiver or trustee to take possession of the property or assets of the Company.

2. **Conversion.**

(a) **Conversion Upon Next Equity Financing.** The entire principal amount of and accrued interest on this Note shall be converted into the class or series of membership interests of the Company (the "Units") issued and sold at the close of the Company's next equity financing in a single transaction or a series of related transactions yielding gross proceeds to the Company of at least $1,000,000 in the aggregate (not including the conversion of the Notes) (the "Next Equity Financing"). The number of Units to be issued upon such conversion shall be equal to the quotient obtained by dividing (i) the entire principal amount of this Note plus accrued but unpaid interest by (ii) the lesser of (A) the price per Unit received in such Next Equity Financing multiplied by eighty percent (80%), and (B) the price per Unit equal to (x) the sum of (a) $10,000,000 plus (b) the aggregate principal amount of all Notes issued pursuant to the Purchase Agreement (the sum of (a) and (b), the "Valuation Amount") divided by (y) the aggregate number of membership units of the Company outstanding, on a fully-diluted basis, immediately prior to the Next Equity Financing, rounded to the nearest whole share, and the issuance of such Units upon such conversion shall be upon the terms and subject to the conditions applicable to the Next Equity Financing.

(b) **Conversion Upon a Change of Control.** If a Change of Control (as defined below) is consummated prior to the Maturity Date and the consummation of the Next Equity Financing, the Holder shall be entitled to convert the entire principal amount of and accrued interest on this Note immediately prior to such Change of Control into the latest class or series of membership interests issued by the Company prior to such Change of Control (the "Prior COC Units"). The number of Prior COC Units to be issued upon such conversion shall be equal to the quotient obtained by dividing (i) the entire principal amount of this Note plus accrued but unpaid interest by (ii) the lesser of (A) the price each Prior COC Unit is entitled to receive in such Change in Control multiplied by eighty percent (80%), and (B) the price per Prior COC Unit equal to the Valuation Amount divided by the aggregate number of membership units of the Company outstanding, on a fully-diluted basis, immediately prior to the Change of Control, rounded to the nearest whole share.

(c) **Conversion at Maturity.** If this Note has not been otherwise converted, on the Maturity Date, in lieu of receiving payment pursuant to Section 1 above, the Holder shall be entitled to convert the entire principal amount of and accrued interest on this Note into the latest class or series of membership interests issued by the Company prior to such Maturity Date (the "Prior Maturity Date Units"). The number of Prior Maturity Date Units to be issued upon such conversion shall be equal to the quotient obtained by dividing (i) the entire principal amount of this Note plus accrued but unpaid interest by (ii) the price per Prior Maturity Date Unit equal to the Valuation Amount divided by the aggregate number of membership units of the Company outstanding, on a fully-diluted basis, immediately prior to the Maturity Date, rounded to the nearest whole share.

(d) **Mechanics and Effect of Conversion.** Upon conversion of this Note pursuant to this Section 2, the Holder shall surrender this Note, duly endorsed, at the principal offices of the Company or any transfer agent of the Company. At its expense, the Company will, as soon as practicable thereafter, issue and deliver to such Holder, at such principal office, a certificate or certificates, or other documentation, for the number of Units which such Holder is

entitled upon such conversion. Upon conversion of this Note, the Company will be forever released from all of its obligations and liabilities under this Note with regard to that portion of the principal amount and accrued interest being converted including without limitation the obligation to pay such portion of the principal amount and accrued interest.

(e) **Definition.** The term "Change of Control" shall mean the sale, conveyance or other disposition of all or substantially all of the Company's property or business or the Company's merger with or into or consolidation with any other corporation, limited liability company or other entity (other than a wholly owned subsidiary of the Company), provided that the term "Change of Control" shall not include a merger of the Company effected exclusively for the purpose of changing the domicile of the Company, to an equity financing in which the Company is the surviving entity, or to a transaction in which the members of the Company immediately prior to the transaction own 50% or more of the voting power of the surviving corporation following the transaction.

3. **Payment; Prepayment.** All payments shall be made in lawful money of the United States of America at such place as the Holder hereof may from time to time designate in writing to the Company. Payment shall be credited first to the accrued interest then due and payable and the remainder applied to principal. Prepayment of any Note may be made at any time without penalty.

4. **Transfer; Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Notwithstanding the foregoing, the Holder may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Company, except for transfers to affiliates. Subject to the preceding sentence, this Note may be transferred only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company. Thereupon, a new note for the same principal amount and interest will be issued to, and registered in the name of, the transferee. Interest and principal are payable only to the registered holder of this Note.

5. **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the Delaware Limited Liability Company Act, as to matters within the scope thereof, and as to all other matters shall be governed by, and construed in accordance with, the internal laws of the State of New York, without reference to principles of conflict of laws or choice of laws that would apply a different law.

6. **Amendments and Waivers.** Any term of this Note may be amended only with the written consent of the Company and the Requisite Majority. Any amendment or waiver effected in accordance with this Section 6 shall be binding upon the Company, each Holder and each transferee of any Note.

**COMPANY:**

**PRIDEWEAR, LLC**

By: ______________________
Name: Ian S. Leopold
Title: Manager

575 Madison Avenue, 10th Floor
New York, NY 10022

**PRIDEWEAR, LLC**

Ian S. Leopold
President & CEO

March 20, 2015

Kim,

Welcome to the PRIDEWEAR.com Team!

Attached is your investor documentation.

II: PRIDEWEAR, LLC Convertible Note – Executed

Please know, you are always welcome to call my cell 410-215-0128.

Looking forward to delivering you a Championship Team!

Carpe Diem,

Ian

Cc: Andrew Sucoff, Goodwin & Procter

ISL/jp

**BE PROUD.**

575 Madison Avenue, 10th Floor • New York, NY 10022
Phone: 212-496-7159 • Fax: 212-504-3027 • ileopold@pridewear.com • pridewear.com

SHIP INTERESTS
STERED UNDER
*CT*"), OR UNDER
CONVERTIBLE
SSUABLE UPON
ANSFERABILITY
LD EXCEPT AS
ATE SECURITIES
AN EXEMPTION
ULD BE AWARE
RISKS OF THIS
SSUER OF THIS
OF COUNSEL IN
E EFFECT THAT
THE SECURITIES

February 2, 2015

y (the "Company"),
,000 Thousand
al amount at a rate
rtible Promissory
to that certain
"Purchase
rs thereof are
herein shall have
ct to the following

2, this Note will
ng the two (2) year
e "Maturity Date").
be due and payable
rincipal sum of this
mediately due and
benefit of creditors,
tion for relief under
issal for a period of
e possession of the