**AMERICAN COLLEGIATE SPORTS AND FITNESS, LLC**

**EXHIBIT 3**

<u>Limited Liability Company Operating Agreement</u>

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT of American Collegiate Sports and Fitness, LLC (the "**Company**") is effective as of December 1, 2012 and entered into by each of the persons named in <u>Exhibit A</u> hereto (referred to individually as a "**Member**" and collectively as the "**Members**").

**WHEREAS**, the Company was formed as a limited liability company under Chapter 18 of Title 6, et seq., of the Delaware Code (the "**Act**") on May 17, 2012; and

**WHEREAS**, the Members enter into this Limited Liability Operating Agreement (the "**Agreement**") to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

**NOW THEREFORE**, in consideration of the mutual covenants expressed herein, the Members hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article or elsewhere in this Agreement and when not so defined shall have the meanings set forth in the Act.

"**Capital Account**" means a separate capital account maintained for each Member in accordance with the rules of Treasury Regulations Section 1.704-1(b)(2)(iv).

"**Capital Contribution**" means the amount of cash, property or services contributed to the Company.

"**Company**" means American Collegiate Sports and Fitness, LLC, a Delaware limited liability company.

"**Manager**" means a Person who is nominated or elected to manage the Company under Section 5.1.

"**Member**" means a Person who acquires Membership Interests, as permitted under this Agreement, and who becomes or remains a Member.

"**Membership Interests**" means the interest conferred by this Agreement, based the Percentage Interest in the Company as expressed on <u>Exhibit A</u>, and that Member's rights, powers and duties as a Member of the Company.

"**Percentage Interest**" means a percent ownership in the Company entitling the holder to an economic and voting interest in the Company, which is equal to the number of Units held by a Member divided by all outstanding Units.

"**Person**" means an individual, partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"**Tax Distribution**" means an amount distributed to each Member equal to the amount by which the Member's Tax Liability exceeds the aggregate distributions made to such Member for any taxable year.

"**Tax Liability**" means the product of (x) the Tax Rate times (y) the Member's distributive share of the Company's net taxable income, if any, for any taxable year (as determined under Code Section 703(a) but including separately stated items described in Code Section 702(a)); <u>provided</u>, that items of income, gain, loss and deduction attributable to the sale or exchange of all or substantially all of the assets of the Company shall be excluded from such calculation.

"**Tax Rate**" means, for any period, forty percent (40%), which may be equitably adjusted in the discretion of the Managers to account for periods during which relevant tax rates change.

"**Unit**" means a unit of ownership in the Company entitling the Member holding such Unit to an economic interest and a voting interest in the Company.

"**Withholding Payment**" means payments made by the Company with respect to any Member in amounts required to discharge any obligation of the Company to make any payments to any governmental authority with respect to any foreign, federal, state or local tax or any other withholding liability arising as a result of such Member's Interest.

## ARTICLE 2
## ORGANIZATION AND POWERS

2.1    <u>Organization</u>.  The Company has been formed by the filing of its Certificate of Formation with the Delaware Secretary of State pursuant to the Act.  The registered agent and registered office of the Company in Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  The Managers may from time to time designate another registered agent by appropriate filings with the Secretary of State.  The Certificate of Formation may be restated by the Members as provided in the Act or amended by the Managers with respect to the address of the registered office of the Company in Delaware and the name and address of its registered agent in Delaware or to make corrections required by the Act.  The Certificate of Formation as so amended from time to time, is referred to herein as the "**Certificate**."  The Managers shall deliver a copy of the Certificate and any amendment thereto to any Member who so requests.  Melissa K. Lang is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate with the Secretary.  Upon the filing of the Certificate with the Secretary, and any subsequent qualifications of the Company, her powers as an "authorized person" shall cease, and the Managers thereupon shall become the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act.  The Managers shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

2

2.2     Purposes and Power.  The principal business activity and purpose of the Company shall be to engage in any lawful act or activity for which limited liability companies may be formed under the Act.  The Company shall possess and may exercise all the powers and privileges granted by the Act, any other law or this Agreement, together with any powers incidental thereto, and may take any other action not prohibited under the Act or other applicable law, so far as such powers and actions are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the Company.

2.3     Principal Place of Business.  The principal office and place of business of the Company shall be determined by the Managers.  In addition, the Company may maintain such other offices as the Manager may deem advisable at any other place or places within or without the United States.

2.4     Fiscal Year.  The taxable year of the Company shall be the calendar year or such other taxable year required under the Internal Revenue Code of 1986, as amended (the "**Code**").  The fiscal year of the Company shall be the same as its taxable year.

2.5     Qualification in Other Jurisdictions.  The Manager shall cause the Company to be qualified or registered under applicable laws of any jurisdiction in which the Company transacts business and shall be authorized to execute, deliver and file any certificates and documents necessary to effect such qualification or registration, including without limitation, the appointment of agents for service of process in such jurisdictions.

## ARTICLE 3
## CAPITAL AND CAPITAL CONTRIBUTIONS; MEMBERSHIP INTERESTS

3.1     Initial Capital Contributions and Membership Interests.

(a)     The Capital Contributions, Units and Percentage Interest of each Member, are listed in Exhibit A, which is made part of this Agreement.

(b)     The Members shall have no interest in the Company other than the interest conferred by this Agreement and that Member's rights, powers and duties as a Member of the Company.  Such Membership Interests shall be deemed to be personal property giving only the rights provided by this Agreement.  Every Member by virtue of having become a Member shall be held to have expressly assented and agreed to the terms hereof and to have become a party hereto.  Ownership of a Membership Interest shall not entitle a Member to any title in or to the whole or any part of the property of the Company or right to call for a partition or division of the same or for an accounting.

3.2     New Members.

(a)     From time to time the Company may issue Units to additional persons for such Capital Contributions and upon such terms and conditions as determined by mutual consent of the Managers; *provided, however*, that the Company's issuance of Units shall also require the approval of a majority-in-interest of the Units.

3

(b)     Each new (or transferee) Member shall be required to sign a counterpart, amendment or addendum hereto, in the form attached hereto as Exhibit D, thereby agreeing to be subject to and bound by the terms and conditions hereof.  In addition, Exhibit A shall be amended to reflect each new Member.

3.3     Capital Contributions by Members.  No Member shall be obligated to make additional capital contributions; however, the Company may borrow from its Members as well as from banks or other lending institutions to finance its working capital or the acquisition of assets upon such terms and conditions as shall be approved by the Managers, and any borrowing from Members shall not be considered contributions or reflected in their Capital Accounts.  No Member shall have any liability for the repayment of the contribution of any other Member and each Member shall look only to the assets to the Company for return of his or her contribution.

3.4     Capital Accounts.  A separate Capital Account shall be maintained for each Member in accordance with the rules of Treasury Regulations Section 1.704-1(b)(2)(iv), and this Section 3.4 shall be interpreted and applied in a manner consistent therewith.  The Company may, upon a determination by the Managers, adjust the Capital Accounts of its Members to reflect revaluations of the Company property whenever the adjustment would be permitted under Treasury Regulations Section 1.704-1(b)(2)(iv)(*f*).  In the event that the Capital Accounts of the Members are so adjusted, (i) the Capital Accounts of the Members shall be adjusted in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(*g*) for allocations of depreciation, depletion, amortization and gain or loss, as computed for book purposes, with respect to such property and (ii) the Members' distributive shares of depreciation, depletion, amortization and gain or loss, as computed for tax purposes, with respect to such property shall be determined so as to take account of the variation between the adjusted tax basis and book value of such property in the same manner as under Section 704(c) of the Code.  In the event that Code Section 704(c) applies to Company property, the Capital Accounts of the Members shall be adjusted in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(*g*) for allocations of depreciation, depletion, amortization and gain and loss, as computed for book purposes, with respect to such property.  Notwithstanding any provision contained herein to the contrary, no Member shall be required to restore any negative balance in its Capital Account.

3.5     Interest.  No interest shall be paid on Capital Contributions or on the balance of a Member's Capital Account.

3.6     No Appraisal Rights.  No Member shall have any right to have its interest in the Company appraised and paid out under the circumstances provided in Section 18-210 of the Act, or under any other circumstances.

## ARTICLE 4
## ALLOCATIONS AND DISTRIBUTIONS

4.1     Allocations.  The profits and losses of the Company and all items of Company income, gain, loss, deduction, or credit shall be allocated, for Company book purposes and for tax purposes, pro rata in accordance with Percentage Interests.

4.2     Distribution of Company Funds.

4

(a)     Distributions.  Subject to Section 4.3, all amounts that the Managers determine to be available for distribution shall be distributed to the Members in accordance with their Percentage Interests.

(b)     Tax Distributions.  Within ninety (90) days following the end of each calendar year (or such shorter period as is determined at any time by the Managers), the Company shall use commercially reasonable efforts to distribute to each Member a Tax Distribution.  In the event a Member's distributive share of Company net taxable income for any period is negative, such negative amount shall be carried forward and taken into account for all purposes of this Section 4.2(b) (including application of this sentence) in determining such Member's distributive share of Company net taxable income in each subsequent period (whether or not in the same fiscal year) until such negative amount is offset in full by positive net taxable income.  Distributions to a Member under this Section 4.2(b) shall reduce future distributions to that Member under Section 4.2(a) by a like amount.  For purposes of maintaining the priorities of distribution set forth in Section 4.2(a), distributions under this Section 4.2(b) shall be treated as having been distributed under the appropriate clause of Section 4.2(a).

4.3     Distribution Upon Dissolution.  Proceeds from a sale or liquidation of all or substantially all of the assets of the Company and amounts available upon dissolution, after payment of, or adequate provision for, the debts and obligations of the Company, including the expenses of its liquidation and dissolution, and liabilities to its Members, if any, other than liabilities to Members for distributions shall be distributed and applied in the following priorities:

(a)     First, to fund reserves to the extent deemed appropriate by the Managers for contingent, conditional, unmatured or other liabilities of the Company not otherwise paid or provided for, provided that, upon the expiration of such period of time as the Managers shall deem advisable, the balance of such reserves remaining after payment of such liabilities shall be distributed in the manner hereinafter set forth; and

(b)     Thereafter, pro rata in proportion to positive Capital Account balances.

4.4     Distribution of Assets in Kind.  No Member shall have the right to require any distribution of any assets of the Company to be made in cash or in kind.  If any assets of the Company are distributed in kind, such assets shall be distributed on the basis of their fair market value as determined by an independent third party appraiser appointed by the Managers.  The appraisal conducted shall be binding on all parties.  Any Member entitled to any interest in such assets shall, unless otherwise determined by the Members, receive separate assets of the Company, and not an interest as tenant-in-common with other Members so entitled in each asset being distributed.

4.5     Withholding.  The Company shall at all times be entitled to make Withholding Payments.  Any Withholding Payment made from funds withheld upon a distribution will be treated as distributed to such Member for all purposes of this Agreement.  Any other Withholding Payment will be deemed to be a recourse loan by the Company to the relevant Member.  The amount of any Withholding Payment treated as a loan, plus interest thereon from the date of each such Withholding Payment until such amount is repaid to the Company at an interest rate per annum equal to the prime rate quoted in The Wall Street Journal from time to

time, plus two percent (2%), shall be repaid to the Company, as determined by the Managers in their sole discretion, in whole or in part, (i) upon demand by the Company or (ii) by deduction from any distributions payable to such Member pursuant to this Agreement (with the amount of such deduction treated as distributed to the Member). If the proceeds to the Company from an investment are reduced on account of taxes withheld at the source or otherwise imposed on the Company (or any other entity in which it invests), and such taxes are imposed on, or with respect to, one or more of the Members in the Company, the amount of the reduction shall be borne by the relevant Members and treated as if it were paid by the Company as a Withholding Payment with respect to such Members. If the proceeds to the Company from an investment are reduced on account of taxes withheld at the source, and such taxes are imposed on the Company, the amount of the reduction shall be treated as an expense of the Company. This Section 4.5 and the other provisions of this Agreement shall be applied consistently with the requirements of Treasury Regulations Section 1.704-1(b)(4)(viii). Each Member agrees to indemnify and hold harmless the Company and the other Members from and against any and all liability with respect to Withholding Payments required on behalf of, or with respect to, such Member. A Member's obligation to so indemnify shall survive the liquidation and dissolution of the Company, and the Company may pursue and enforce all rights and remedies it may have against each such Member under this Section 4.5.

Each Member shall provide such information, documentation or certification as may be reasonably requested by the Managers in connection with tax filings in any jurisdiction in which or through which the Company invests, including any information or certification required for the Company (or any other entity in which the Company directly or indirectly invests) to comply with any tax return or information filing requirements or to obtain a reduced rate of, or exemption from, any applicable tax, whether pursuant to the laws of such jurisdiction or an applicable tax treaty. Such information may include information regarding the ultimate beneficial owners of any Member. Each Member acknowledges and agrees that the Managers may provide any such information, documentation or certifications to any applicable tax authority. Any taxes imposed by any jurisdiction as a result of a Member's failure to provide any requested information, documentation or certification (regardless of whether such information, documentation or certification is reasonably requested) shall be treated as taxes imposed on or with respect to such Member for purposes of this Section 4.5.

# ARTICLE 5
# MANAGEMENT

5.1 <u>Management</u>.

(a) The business of the Company shall be managed by one or more Managers. The Members initially nominate and elect the person(s) set forth in <u>Exhibit B</u> to serve as Manager(s) of the Company. Managers shall serve at the pleasure of the Members and may be elected or removed by Members holding a majority-in-interest of the Units. <u>Exhibit B</u> shall be amended from time to time to reflect any changes in Managers. In the event of a dispute between Managers, final determination shall be made by a vote of the majority of the Managers. Any Manager may bind the Company in all matters in the ordinary course of business.

(b) Without limiting the foregoing, the Managers shall have the right and authority:

(i) to manage the business and affairs of the Company in his or her sole discretion and for this purpose to employ, retain or appoint any employees, consultants, agents, brokers, professionals or other persons in any capacity for such compensation and on such terms as the Managers deems necessary or desirable and to delegate to such persons such of his or her duties and responsibilities as he shall determine;

(ii) to make distributions in accordance with this Agreement;

(iii) to enter into, execute, deliver, acknowledge, make, modify, supplement or amend any documents or instruments in the name of the Company; and

(iv) to make elections and prepare and file returns regarding any federal, state or local tax obligations of the Company, and to designate a Member to serve as the "tax matters partner" of the Company for purposes of Section 6231(a)(7) of the Code with power to manage and represent the Company in any administrative proceeding of the Internal Revenue Service.

5.2 <u>Reliance by Third Parties</u>. Any person dealing with the Company or any Member may rely upon a certificate signed by the Managers as to (i) the identity of any Member; (ii) any factual matters relevant to the affairs of the Company; (iii) the persons who are authorized to execute and deliver any document on behalf of the Company; or (iv) any action taken or omitted by the Company or any Member. Any action taken by the Managers, and the signature of the Managers on any agreement, contract, instrument or other document on behalf of the Company, shall be sufficient to bind the Company and shall conclusively evidence the authority of the Managers and the Company with respect thereto.

5.3 <u>Meetings of Managers</u>. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference

telephone or by any other means permitted under Delaware law.  In addition, actions may be taken without a meeting if the Managers sign a written consent reflecting the action taken.

5.4     Banking.  The Managers are authorized to set up one or more bank accounts and are authorized to execute any banking resolutions provided by the institution where the accounts are being set up.  All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company.

5.5     Officers.  The Managers are authorized to appoint one or more officers from time to time.  The officers shall hold office until their successors are chosen and qualified.  Subject to any employment agreement entered into between the officer and the Company, an officer shall serve at the pleasure of the Managers.  The current officer(s) of the Company are listed on Exhibit C.

## ARTICLE 6
## ACCOUNTS AND ACCOUNTING

6.1     Accounts.  Complete books of account of the Company's business, in which each Company transaction shall be fully and accurately entered, shall be kept at the Company's principal executive office and shall be open to inspection and copying on reasonable notice by any Member, Manager or their authorized representatives during normal business hours for purposes reasonably related to the interest of such person as a Member or Manager.  The costs of such inspection and copying shall be borne by the Member or Manager.

6.2     Records.  At all times during the term of existence of the Company, and beyond that term if the Managers deem it necessary, the Managers shall keep or cause to be kept the following:

(a)     A current list of the full name and last known business or residence address of each Member and Manager, together with the Capital Contribution, the amount and terms of any agreed upon future Capital Contribution, and Membership Interest of each Member;

(b)     A copy of the certificate of formation, as amended;

(c)     Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the three most recent taxable years; and

(d)     An original executed copy or counterparts of this Agreement and any amendments.

6.3     Income Tax Returns.  Within 45 days after the end of each taxable year, the Company shall use its commercially reasonable efforts to send to each of the Members all information necessary for the Members to complete their federal and state income tax or information returns and a copy of the Company's federal, state, and local income tax or information returns for such year.

6.4     Tax Matters Partner.  Ian Scott Leopold shall act as tax matters partner (the "**Tax Matters Partner**") of the Company to represent the Company (at the Company's expense)

in connection with all examinations of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith. The Tax Matters Partner shall determine the appropriate treatment of each item of income, gain, loss, deduction and credit of the Company and the accounting methods and conventions under the tax laws of the United States, the several states and other relevant jurisdictions as to the treatment of any such item or any other method or procedure related to the preparation of such tax returns. The Tax Matters Partner may cause the Company to make or refrain from making any and all elections permitted by such tax laws. No Member shall knowingly assert a position, in respect of matters relating to the Company's income, gain, loss, deduction or credit under the Code, which such Member knows to be materially inconsistent with the tax returns of the Company prepared by the Tax Matters Partner or otherwise to be materially adverse to or prejudicial to the Company.

## ARTICLE 7
## MEMBERSHIP-MEETINGS, VOTING

7.1     Members and Voting Rights. Members shall have the right and power to vote on all matters with respect to which this Agreement or Delaware law requires or permits such Member action. Voting shall be based on Units held by each Member. Unless otherwise stated in this Agreement or under Delaware law, the vote of the Members holding a majority-in-interest of the Units shall be required to approve or carry an action.

7.2     Meetings. Regular or annual meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice shall be given not less than 5 days nor more than 60 days before the date of the meeting to each member entitled to vote at the meeting. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by Delaware law, including by conference telephone or similar communications equipment. In addition, any action which could be taken at a meeting can be approved without a meeting and without notice if a consent in writing, stating the action to be taken, is signed by the holders of the minimum Membership Interests needed to approve the action. A consent transmitted by electronic transmission shall be deemed to be written and signed for purposes of this paragraph.

7.3     Authority. Unless specifically authorized by the Managers, no Member shall be an agent of the Company or have any right, power or authority to act for or to bind the Company or to undertake or assume any obligation or responsibility of the Company or of any other Member.

7.4     Limited Liability of Members. Except as otherwise provided in the Act, no Member of the Company shall be obligated personally for any debt, obligation or liability of the Company or of any other Member, whether arising in contract, tort or otherwise, solely by reason of being a Member of the Company. Except as otherwise provided in the Act, by law or expressly in this Agreement, no Member shall have any fiduciary or other duty to another Member with respect to the business and affairs of the Company, and no Member shall be liable to the Company or any other Member for acting in good faith reliance upon the provisions of this Agreement. No Member shall have any responsibility to restore any negative balance in its Capital Account or to contribute to or in respect of the liabilities or obligations of the Company

9

or return distributions made by the Company except as required by the Act or other applicable law. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or the management of its business or affairs under this Agreement or the Act shall not be grounds for making its Members responsible for any liability of the Company.

7.5  **Compliance with Securities Laws and Other Laws and Obligations**. Each Member hereby represents and warrants to the Company and acknowledges that (a) it has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of an investment in the Company and making an informed investment decision with respect thereto, (b) it is able to bear the economic and financial risk of an investment in the Company for an indefinite period of time and understands that it has no right to withdraw and have its interest repurchased by the Company, (c) it is acquiring an interest in the Company for investment only and not with a view to, or for resale in connection with, any distribution to the public or public offering thereof, (d) it understands that the equity interests in the Company have not been registered under the securities laws of any jurisdiction and cannot be disposed of unless they are subsequently registered and/or qualified under applicable securities laws and the provisions of this Agreement have been complied with, and (e) if it is an entity, the execution, delivery and performance of this Agreement do not require it to obtain any consent or approval that has not been obtained and do not contravene or result in a default under any provision of any existing law or regulation applicable to it, any provision of its charter, by-laws or other governing documents (if applicable) or any agreement or instrument to which it is a party or by which it is bound.

## ARTICLE 8
## WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

8.1  **Withdrawal**. A Member may withdraw from the Company prior to the dissolution and winding up of the Company with the unanimous consent of the other Members, or if such Member transfers or assigns all of his or her Membership Interests pursuant to Section 8.2 below. A Member which withdraws pursuant to this Section 8.1 shall be entitled to a distribution in an amount equal to such Member's Capital Account.

8.2  **Restrictions on Transfer**. A Member may transfer Membership Interests to any other Person with the prior consent of the Managers. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A person who acquires Membership Interests in accordance with this section shall be admitted as a Member of the Company after the person has agreed to be bound by the terms of this Agreement by executing a consent in the form of Exhibit D.

## ARTICLE 9
## TERM, DISSOLUTION AND WINDING UP

9.1  **Term**. The term of the Company commenced on the date of filing of the Certificate and shall be perpetual, unless an earlier term is specified in Section 9.2 or the Company is dissolved and terminated in accordance with the provisions of this Agreement.

10

9.2     Dissolution.  The Company shall be dissolved upon the first to occur of the following events:

(a)     The vote of Members holding a majority of the outstanding Units to dissolve the Company.

(b)     Entry of a decree of judicial dissolution under the Act.

(c)     At any time there are no Members, provided that the Company is not dissolved and is not required to be wound up if, within 180 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and to the admission of the legal representative of such Member or its assignee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member.

9.3     No automatic dissolution upon certain events.  Neither the death, incapacity, disassociation, bankruptcy or withdrawal of a Member shall automatically cause a dissolution of the Company.

## ARTICLE 10
## INDEMNIFICATION

10.1     Liability for Acts and Omissions.  A Manager shall not be liable, responsible or accountable in damages or otherwise to any of the Members for any act or omission performed or omitted in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority granted by this Agreement and in the best interests of the Company.  The provisions of this Section 10.1 shall apply to Managers and any other person exercising rights and duties delegated by the Managers, or on behalf of the Managers and any person or entity who formerly served in any of the foregoing capacities.

10.2     Right to Indemnification.  Except as limited by law and subject to the provisions of this Section 10.2, the Company shall indemnify each Manager against all expenses incurred by them in connection with any Proceeding (as defined below) in which a Manager is involved as a result of serving in such capacity, except that no indemnification shall be provided for a Manager regarding any matter as to which it shall be finally determined that said Manager did not act in good faith and in the reasonable belief that such Manager's action was in the best interests of the Company, or with respect to a criminal matter, that such Manager had reasonable cause to believe that such Manager's conduct was unlawful.

10.3     Award of Indemnification.  A Manager may only be determined to be ineligible for indemnification if a determination is made by independent legal counsel appointed by the Managers that indemnification of such Manager would be a violation of law or inconsistent with the provisions of Section 10.1.

10.4     Successful Defense.  Notwithstanding any contrary provisions of this Article 10, including Section 10.3 above, if a Manager has been wholly successful on the merits in the defense of any Proceeding in which it was involved by reason of its position as a Manager or as a

11

result of serving in such capacity (including termination of investigative or other Proceedings without a finding of fault on the part of the Manager), the Manager shall be indemnified by the Company against all Expenses (as defined below) incurred by the Manager in connection therewith.

10.5   Advance Payments.   Except as limited by law or the provisions of this Section 10.3, expenses incurred by a Manager in defending any Proceeding, including a Proceeding by or in the right of the Company, may be paid by the Company to the Manager in advance of final disposition of the Proceeding.  The Company may require that such Manager execute a written undertaking to repay the amount of any advance if the Manager is determined pursuant to this Article 10 or adjudicated to be ineligible for indemnification.  Any such undertaking by a Manager shall be an unlimited general obligation of the Manager, need not be secured and may be accepted without regard to the financial ability of the Manager to make repayment.  No advance payment of expenses shall be made if it is determined pursuant to Section 10.3 on the basis of the circumstances known at the time (without further investigation) that the Manager is ineligible for indemnification.

10.6   Definitions.   Solely for purposes of this Section Article 10:

(a)   "Expenses" means all costs, fees, expenses, including attorneys' fees, disbursements and obligations of any nature whatsoever paid or incurred in connection with investigating, defending, being a witness in or participating in (including appeal), or preparing to defend, be a witness in or participate in any Proceeding or in seeking indemnification under this Article 10 and any judgments, awards, fines, penalties and reasonable amounts paid in settlement of a Proceeding; and

(b)   "Proceeding" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, and any claim which could be the subject of a proceeding.

10.7   Insurance.  The Company shall have power to purchase and maintain insurance on behalf of any Manager or Officer, against any liability or cost incurred by such person in any such capacity or arising out of its status as such, whether or not the Company would have power to indemnify against such liability or cost.

10.8   Heirs and Personal Representatives.  The indemnification provided by this Article 10 shall inure to the benefit of the heirs and personal representatives of each Person.

10.9   Non-Exclusivity.  The provisions of this Article 10 shall not be construed to limit the power of the Company to indemnify Persons to the fullest extent permitted by law or to enter into specific agreements, commitments or arrangements for indemnification permitted by law.  The absence of any express provision for indemnification herein shall not limit any right of indemnification existing independently of this Article 10.

10.10   Amendment.  The provisions of this Article 10 may be amended or repealed in accordance with Section 11.2; however, no amendment or repeal of such provisions that adversely affects the rights of a Person under this Article 10 with respect to its acts or omissions at any time prior to such amendment or repeal, shall apply to said Person without its consent.

# ARTICLE 11
# GENERAL PROVISIONS

11.1     <u>Entire Agreement</u>.  This Agreement constitutes the whole and entire agreement of the parties with respect to the subject matter of this Agreement.

11.2     <u>Amendment or Modification</u>.  This Agreement may be amended or modified from time to time only by a written instrument signed by the Members holding a majority interest of the Units; *provided, however,* that:

(a)     any amendment or modification to this Agreement that reduces a Member's Membership Interest when such reduction is not applied proportionally to all other Members shall be effective only with that Member's consent;

(b)     any amendment or modification to this Agreement that increases the liability of a Member to the Company or Members, or adversely affects the limitation of the liability of a Member with respect to the Company, shall be effective only with that Member's consent; and

(c)     the Managers shall be permitted, without the consent of the Members, to update the Schedules attached to this Agreement to reflect (i) the admission of a new Member (who has been approved by the Managers), or (ii) the transfer of a Member's Membership Interest (as provided in Article 8).

11.3     <u>Offset</u>.  Whenever the Company is obligated to make a distribution or payment to any Member, any amounts that Member owes the Company may be deducted from said distribution or before payment by the Managers.

11.4     <u>Notices</u>.  Except as expressly set forth to the contrary in this Agreement, all notices, requests, or consents required or permitted to be given under this Agreement must be in writing and shall be deemed to have been given (i) three (3) days after the date mailed by registered or certified mail, addressed to the recipient, with return receipt requested, (ii) upon delivery to the recipient in person or by courier, (iii) upon receipt of a facsimile transmission by the recipient, or (iv) upon receipt of electronic mail by the recipient.  Such notices, requests and consents shall be given (x) to Members at their addresses on <u>Exhibit A</u>, or such other address as a Member may specify by notice to the Managers, and (y) to the Company at the address of the principal office of Company.  Whenever any notice is required to be given by law, the Certificate or this Agreement, a written waiver thereof, signed by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

11.5     <u>Governing Law; Severability</u>.  This Agreement shall be construed and enforced in accordance with the internal laws of the State of Delaware.  If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

11.6     Further Assurances.  In connection with this Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement and those transactions, as requested by the Managers.

11.7     Waiver of Certain Rights.  Each Member irrevocably waives any right it may have to maintain any action for dissolution of the Company or for partition of the property of the Company.  The failure of any Member to insist upon strict performance of a covenant hereunder or of any obligation hereunder, irrespective of the length of time for which such failure continues, shall not be a waiver of such Member's right to demand strict compliance herewith in the future.  No consent or waiver, express or implied, to or of any breach or default in the performance of any obligation hereunder, shall constitute a consent or waiver to or of any other breach or default in the performance of the same or any other obligation hereunder.

11.8     Counterparts.  This Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document, and all counterparts shall be construed together and shall constitute the same instrument.

11.9     Benefit.  This Agreement shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

11.10    Number and Gender.  Whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, and the neuter gender shall include the male and female as well as a trust, firm, company, or corporation, all as the context and meaning of this Agreement may require.

11.11    No Third Party Beneficiary.  This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Agreement.

## EXHIBIT A

## MEMBERS

The following persons are the Members of the Company, and their capital contributions and ownership is set forth below.

| **Member Name and Address** | **Capital Contribution** | **Units** | **Percentage Interest** |
|---|---|---|---|
| Ian Scott Leopold | $86.00 | 8,600,000 | 89.58% |
| Christophe Karvelis<br>102 Rue d. Grenelle<br>75007 Paris, France | $5.00 | 500,000 | 5.21% |
| David Staub<br>2627 Broadway Ave<br>Evanston, IL 60201 | $5.00 | 500,000 | 5.21% |
| **Total:** | $100.00 | 9,600,000 | 100% |

## EXHIBIT B

## MANAGERS

The following person(s) are elected as Manager(s) of the Company:

    Ian Scott Leopold
    Christophe Karvelis
    David Staub

ACTIVE/65200291.8

## EXHIBIT C

## OFFICERS

The following person(s) are elected as officers of the Company:

| **Name of Officer** | **Title** |
| --- | --- |
| Ian Scott Leopold | Chairman & CEO |

ACTIVE/65200291.8

**EXHIBIT D**

**NEW MEMBER'S CONSENT**

The undersigned agrees to be bound as a Member by the terms of the Limited Liability Company Operating Agreement of American Collegiate Sports and Fitness, LLC, as it maybe amended from time to time, as if the undersigned was a signatory thereof.

_____
(Signature)

Name: _____

Date: _____