EXHIBIT 4

**THIS WARRANT AND ANY SECURITIES ISSUED UPON ANY EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED BY ANY PERSON, INCLUDING A PLEDGEE, UNLESS EITHER (1) A REGISTRATION WITH RESPECT THERETO SHALL BE EFFECTIVE UNDER THE SECURITIES ACT OR (2) THE COMPANY SHALL HAVE RECEIVED AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT IS AVAILABLE, AND THERE SHALL HAVE BEEN COMPLIANCE WITH ALL APPLICABLE STATE SECURITIES OR "BLUE SKY" LAWS.**

Issue Date: May __, 2019                                                                 Warrant No. W-[_]

## PRIDEWEAR, LLC

WARRANT TO PURCHASE UNITS

FOR VALUE RECEIVED, Pridewear, LLC, a Delaware limited liability company (the "**Company**"), hereby certifies that [●], or its registered transferees, successors or assigns (each person or entity holding all or part of this Warrant being referred to as the "**Holder**"), is the registered holder of a warrant (the "**Warrant**") to subscribe for and purchase [●] Units (as defined below) (as adjusted pursuant to Section 3 hereof) (the "**Warrant Units**"), at a purchase price per unit initially equal to $3.00 (as adjusted pursuant to Section 3 hereof, the "**Purchase Price**") on or before 5:00 p.m., New York City time, on the date that is the five (5) year anniversary of the Issue Date stated above (the "**Expiration Date**"), subject to the provisions and upon the terms and conditions hereinafter set forth.

This Warrant was issued pursuant to that certain Common Unit and Warrant Purchase Agreement dated as of May [●], 2019 by and among the Company and the purchaser named therein (the "**Purchase Agreement**").

For purposes of this agreement:

"**Business Day**" means any day other than a Saturday or Sunday on which commercial banks located in New York, New York are open for the general transaction of business.

"**Change of Control**" means either (a) the acquisition of the Company by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger, consolidation or equity transfer, but excluding any such transaction effected primarily for the purpose of changing the domicile of the Company), unless the Company's members of record immediately prior to such transaction or series of related transactions hold, immediately after such transaction or series of related transactions, at least 50% of the voting power of the surviving or acquiring entity (provided that the sale by the Company of its preferred equity for the purposes of raising additional funds shall not constitute a Change of Control hereunder); or (b) a sale, lease or other disposition of all or substantially all of the assets of the Company.

"**Initial Public Offering**" means the closing of the Company's first firm commitment underwritten public offering of the Company's securities pursuant to a registration statement filed under the Securities Act.

"**Operating Agreement**" means the Limited Liability Company Operating Agreement of the Company, by and among the Company and the parties named therein.  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Operating Agreement.

"**Units**" means common units of membership interests in the Company designated as "Units" in the Operating Agreement.

Section 1.  Exercise.

(a)  Method of Exercise; Payment; Issuance of New Warrant.

(i)  Subject to the provisions hereof, the Holder may exercise this Warrant, in whole or in part and from time to time, from the earliest of (i) the Issue Date, (ii) immediately prior to the consummation of a Change of Control and (iii) immediately prior to an Initial Public Offering, to and including the Expiration Date, by the surrender of this Warrant (with the Notice of Exercise attached hereto as Appendix A duly executed) at the principal office of the Company, or such other office or agency of the Company as it may reasonably designate by written notice to the Holder, during normal business hours on any Business Day, and the payment by the Holder by cash, certified check payable to the Company or wire transfer of immediately available funds to an account designated to the exercising Holder by the Company of an amount equal to the then applicable Purchase Price multiplied by the number of Warrant Units then being purchased, or in the event of a cashless exercise pursuant to Section 1(b) below, with the Net Issue Election Notice attached hereto as Appendix B duly executed and completed. On the date on which the Holder shall have satisfied in full the Holder's obligations set forth herein regarding an exercise of this Warrant (provided such date is prior to the Expiration Date), the Holder (or such other person or persons as directed by the Holder) shall be treated for all purposes as the holder of record of such Warrant Units as of the close of business on such date.

(ii)  In the event of any exercise of the rights represented by this Warrant, certificates for the whole number of Units so purchased shall be delivered to the Holder as promptly as is reasonably practicable after such exercise, at the Company's expense and without charge to Holder for any issuance tax in respect to the Warrant Units or any other cost incurred by the Company (except any amounts required to be withheld by the Company pursuant to applicable law), and, unless this Warrant has been fully exercised, a new Warrant representing the whole number of Warrant Units, if any, with respect to which this Warrant shall not then have been exercised shall also be issued to the Holder as soon as reasonably practicable thereafter after such exercise.

(b)  Cashless Right to Convert Warrant into Units.  In addition to and without limiting the rights of the Holder hereof under the terms of this Warrant, if the Fair Market Value (as defined below) of one (1) Warrant Unit is greater than the Purchase Price, the Holder may

elect to receive, without the payment by the Holder of the Purchase Price, Warrant Units equal to the value of this Warrant or any portion hereof upon surrender of (i) this Warrant (or such portion of this Warrant being so exercised) together with (ii) the Net Issue Election Notice annexed hereto as Appendix B duly executed and completed, at the office of the Company or such other office or agency of the Company as it may reasonably designate by written notice to the Holder, during normal business hours on any Business Day.  Thereupon, the Company shall issue to the Holder such number of fully paid, validly issued and non-assessable Warrant Units, as is computed using the following formula:

$$X = \frac{Y(A-B)}{A}$$

where

X = the number of Units to be issued to the Holder upon such exercise of the rights under this Section 1(b).

Y = the total number of Units covered by this Warrant which the Holder has surrendered for cashless exercise.

A = the "Fair Market Value" of one (1) Unit on the date that the Holder delivers the Net Issue Election Notice to the Company as provided herein.

B = the Purchase Price in effect under this Warrant on the date that the Holder delivers the Net Issue Election Notice to the Company as provided herein.

The "**Fair Market Value**" of one (1) Unit as of a particular date shall be determined by the Board of Directors of the Company in good faith. The Company shall respond promptly in writing to an inquiry by the Holder prior to the exercise hereunder as to the Fair Market Value of a Unit.

Section 2.    Reservation of Units; Unit Fully Paid; Listing.  The Company shall keep reserved a sufficient number of Units to provide for the exercise of the rights of purchase represented by this Warrant in compliance with its terms.  All Warrant Units issued upon exercise of this Warrant shall be, at the time of delivery of the Purchase Price therefor in accordance with the terms of this Warrant (or proper exercise of the cashless exercise rights contained in Section 1(b) hereof), duly authorized, validly issued, fully paid and non-assessable Units of the Company, free from all taxes, liens and charges.  The Company shall take all such actions as may be necessary to assure that all Warrant Units may be so issued without violation of any applicable law or governmental regulation or any requirements of any domestic securities exchange upon which capital securities of the Company may be listed (except for official notice of issuance which shall be immediately delivered by the Company upon each such issuance). The Company shall not take any action which would cause the number of authorized but unissued Units to be less than the number of such units required to be reserved hereunder for issuance upon exercise of the Warrant.

Section 3.    <u>Certain Adjustments and Distributions</u>.  The number and kind of securities purchasable upon the exercise of this Warrant shall be subject to adjustment from time to time upon the occurrence of certain events, as follows:

(a)    <u>Subdivision, Consolidation, Reclassification or Change in Equity</u>.  In the event of any consolidation, reclassification or change of the Units into a lesser number or different class or classes of equity, or if the Company pays a dividend or makes a distribution on its Units in equity, the number and the class of Warrant Units deliverable upon exercise of this Warrant shall be proportionally decreased and the Purchase Price for such Warrant Units shall be proportionately increased, such that the exercise of the Warrant with respect to the remaining Warrant Units will result in the Holder receiving the same percentage interest in the Company on a fully diluted basis after such consolidation, reclassification, change, or distribution as it would have received immediately prior to the same, and at the same aggregate Purchase Price.  In the event of any subdivision, reclassification or change of the Units into a greater number or different class or classes of equity, the number and the class of Warrant Snares deliverable upon exercise of this Warrant shall be proportionally increased and the Purchase Price for such Warrant Units shall be proportionately reduced, such that the exercise of the Warrant with respect to the remaining Warrant Units will result in the Holder receiving the same percentage interest in the Company on a fully diluted basis after such subdivision, reclassification or change as it would have received immediately prior to the same, and at the same aggregate Purchase Price.

(b)    <u>Reorganizations</u>.  If there shall occur any capital reorganization of the Units (excluding mergers and consolidations covered under <u>Section 3(c)</u> hereto and other than a subdivision, combination, reclassification or change in par value), then, as part of any such reorganization, lawful provision shall be made so that the Holder shall have the right thereafter to receive upon the exercise of this Warrant the kind and amount of units or other securities or property which such Holder would have been entitled to receive if, immediately prior to any such reorganization, such Holder had held the number of Units which were then purchasable upon the exercise of this Warrant.  In any such case, appropriate adjustment (as reasonably determined by the members of the Company) shall be made in the application of the provisions set forth herein with respect to the rights and interests thereafter of the Holder such that the provisions set forth in this <u>Section 3</u> (including provisions with respect to adjustment of the Purchase Price) shall thereafter be applicable, as nearly as is reasonably practicable, in relation to any units or other securities or property thereafter deliverable upon the exercise of this Warrant.

(c)    <u>Merger, Consolidation or Sale of Assets</u>.  If there shall be a merger or consolidation of the Company (that is not a Change of Control or an Initial Public Offering) with or into another corporation (other than a merger or reorganization involving only a change in the state of incorporation of the Company or the acquisition by the Company of other businesses where the Company survives as a going concern), or the sale of all or substantially all of the Company's equity or assets to any other person (that is not a Change of Control or an Initial Public Offering), then as a part of such transaction, provision shall be made so that the Holder shall thereafter be entitled to receive the number of units or other securities or property of the Company, or of the successor corporation resulting from the merger, consolidation or sale, to which the Holder would have been entitled if the Holder had exercised its rights pursuant to this Warrant immediately prior thereto.  In any such case, appropriate adjustment shall be made in the application of the provisions

4

of this Section 3 to the end that the provisions of this Section 3 shall be applicable after that event in as nearly equivalent a manner as may be practicable.

(d) Certificate of Adjustment. When any adjustment is required to be made in the Purchase Price, the Company shall mail to the Holder a certificate setting forth the Purchase Price after such adjustment and setting forth a brief statement of the facts requiring such adjustment. Delivery of such certificate shall be deemed to be a final and binding determination with respect to such adjustment unless challenged by the Holder within ten (10) days of receipt thereof. Such certificate shall also set forth the kind and amount of equity or other securities or property into which this Warrant shall be exercisable following the occurrence of any of the events specified in this Section 3.

Section 4. Treatment of Warrant Upon Change of Control or Initial Public Offering. So long as this Warrant is outstanding, in the event of a Change of Control or an Initial Public Offering (a "**Transaction**"), this Warrant shall be automatically deemed exercised for the maximum number of Units issuable pursuant to the terms hereof (after taking into account all adjustments described herein) had the Holder elected to exercise this Warrant immediately prior to the closing of such Transaction and purchased all such Units pursuant to the cashless exercise provision set forth in Section 1(b) hereof; provided that the Fair Market Value of one (1) Warrant Unit is greater than the Purchase Price. This Warrant shall terminate upon exercise pursuant to the terms of this Section 4. In the event that immediately prior to the Transaction, the Purchase Price is greater than the Fair Market Value this Warrant shall automatically expire.

Section 5. Notices. Unless otherwise specifically provided herein, all communications under this Warrant shall be in writing and shall be deemed to have been duly given (a) on the date personally delivered to the party to whom notice is to be given, (b) on the day of transmission if sent by facsimile or email with confirmation of receipt, (c) on the Business Day after delivery to Federal Express or similar overnight courier which utilizes a written form of receipt, or (d) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly addressed, return receipt requested, to the Holder or to the Company, as applicable at the address indicated therefor on the signature page of this Warrant. Any party hereto may change its address for purposes of this Section 5 by giving the other party written notice of the new address in the manner set forth herein.

Section 6. Transfer Taxes. The Company will pay any documentary stamp taxes attributable to the initial issuance of Warrant Units issuable upon the exercise of the Warrant; provided, however, that the Company shall not be required to pay any tax or taxes which may be payable in respect of any transfer involved in the issuance or delivery of any certificates for Warrant Units in a name other than that of the registered holder of this Warrant in respect of which such equity is issued, and in such case, the Company shall not be required to issue or deliver any certificate for Warrant Units or any Warrant until the person requesting the same has paid to the Company the amount of such tax or has established to the Company's reasonable satisfaction that such tax has been paid.

Section 7. Mutilated or Missing Warrant. In case this Warrant shall be mutilated, lost, stolen, or destroyed, the Company shall issue in exchange and substitution of and upon

cancellation of the mutilated Warrant, or in lieu of and substitution for the Warrant lost, stolen or destroyed, a new Warrant of like tenor and for the purchase of a like number of Warrant Units, but only upon receipt of evidence reasonably satisfactory to the Company of such loss, theft or destruction of the Warrant, and with respect to a lost, stolen or destroyed Warrant, reasonable indemnity or bond with respect thereto, if requested by the Company.

Section 8.  <u>Fractional Units</u>.  No fractional Units shall be issued in connection with any exercise or cashless exercise hereunder, and in lieu of any such fractional units the Company shall make a cash payment therefor to the Holder based on the Fair Market Value of a Unit on the date of exercise or cashless exercise of this Warrant.

Section 9.  <u>Compliance with Securities Act and Legends</u>.  The Holder, by acceptance hereof, agrees that this Warrant and the Units to be issued upon exercise hereof, are being acquired for investment and that such Holder will not offer, sell or otherwise dispose of this Warrant, or any Units to be issued upon exercise hereof, except under circumstances which will not result in a violation of the Securities Act of 1933, as amended, or the rules and regulations promulgated thereunder, as amended (the "**Securities Act**"), or any state securities laws.  Upon exercise of this Warrant, the Holder shall confirm in writing, by executing the applicable exercise notice form attached as <u>Appendix A</u> or <u>Appendix B</u> hereto, that the Units so purchased are being acquired for investment and not with a view toward distribution or resale.  All Units issued upon exercise of this Warrant (unless registered under the Securities Act) shall be stamped or imprinted with a legend as follows:

> THIS SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR ANY OTHER SECURITIES LAWS AND MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF (1) AN EFFECTIVE REGISTRATION STATEMENT COVERING THESE SECURITIES UNDER THE ACT AND ANY OTHER APPLICABLE SECURITIES LAWS, OR (2) AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

Section 10.  <u>Rights as Member; Information</u>.  Except as expressly provided in this Warrant, no Holder, as such, shall be entitled to vote or receive dividends or be deemed a member of the Company, the holder of Units or any other securities of the Company which may at any time be issuable on the exercise hereof for any purpose, nor shall anything contained herein be construed to confer upon the Holder, as such, any of the rights of a member of the Company or any right to vote for the election of the directors or managers or upon any matter submitted to members at any meeting thereof, or to receive notice of meetings, or to receive dividends or subscription rights or otherwise, until this Warrant shall have been exercised and the Warrant Units purchasable upon the exercise hereof shall have become deliverable, as provided herein.  In connection with any exercise of this Warrant, and as a condition thereto, and to the issuance of any Warrant Units, the Holder agrees to become a "Member" of the Company by executing and delivering a counterpart signature page to the Operating Agreement to the

Company and any other equityholder agreements of the Company then in effect to which other holders of equity of the Company are parties.

Section 11.    Modification and Waiver.  This Warrant and any provision hereof may be changed, waived, discharged or terminated only by an instrument in writing signed by the Company and the then holders of a majority of the Units underlying all outstanding Warrants issued pursuant to the Purchase Agreement, and such change, waiver, discharge or termination shall be binding on all current and future Holders.

Section 12.    Descriptive Headings.  The descriptive headings contained in this Warrant are inserted for convenience only and do not constitute a part of this Warrant.

Section 13.    Governing Law.  The validity, interpretation and performance of this Warrant shall be governed by, and construed in accordance with, the laws of the State of New York, regardless of the law that might be applied under principles of conflicts of law.

Section 14.    Acceptance.  Receipt of this Warrant by the Holder hereof shall constitute acceptance of and agreement to the foregoing terms and conditions.

Section 15.    Assignment.  Without the prior written consent of the Company, this Warrant shall not be assigned, pledged, or hypothecated in any way (whether by operation of law or otherwise) by the Holder and shall not be subject to execution, attachment or similar process. Any attempted transfer, assignment, pledge, hypothecation or other disposition of this Warrant or of any rights granted hereunder contrary to the provisions of this Section 15, or the levy of any attachment or similar process upon this Warrant or such rights, shall be null and void.

Section 16.    Representations of the Holder.  The Holder hereby represents and warrants as of the Issue Date and as of each date on which this Warrant is exercised as follows:

(a)    Acquisition for Personal Account; Accredited Investor.  The Holder is acquiring this Warrant and, upon exercise, this Warrant Units solely for its own account for investment and not with a view to or for sale or distribution of said Warrant, this Warrant Units or any part thereof.  The entire legal and beneficial interests of this Warrant and Warrant Units that the Holder is acquiring is being acquired for, and will be held for, its own account only.  The Holder is an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act.

(b)    Securities not Registered.

(i)    The Holder understands that this Warrant and the Warrant Units have not been registered under the Securities Act on the basis that no distribution or public offering of the Units is to be effected.  The Holder realizes that the basis for the exemption may not be present if, notwithstanding its representations, the Holder has a present intention of acquiring the securities for a fixed or determinable period in the future, selling (in connection with a distribution or otherwise), granting any participation in, or otherwise distributing the securities.  The Holder has no such present intention.

          (ii)     The Holder recognizes that this Warrant and the Warrant Units must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available.  The Holder recognizes that the Company has no obligation to register this Warrant or the Warrant Units, or to comply with any exemption from such registration.

          (iii)     The Holder is aware that neither this Warrant nor the Warrant Units may be sold pursuant to Rule 144 adopted under the Securities Act unless certain conditions are met.  The Holder is aware that the conditions for resale set forth in Rule 144 have not been satisfied and that the Company presently has no plans to satisfy these conditions in the foreseeable future.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Company has caused this Warrant to be executed on its behalf by one of its officers thereunto duly authorized.

**PRIDEWEAR, LLC**

By: _____
      Name:
      Title:

[*Signature page to Warrant to Purchase Units*]

# APPENDIX A

## Notice of Exercise

To: Pridewear, LLC

1.  The undersigned hereby irrevocably elects to purchase _____ Units of Pridewear, LLC (the "**Company**") pursuant to the terms of the attached originally executed Warrant, and tenders herewith payment of the Purchase Price of such Units in full, by cash, certified check, or wire transfer. Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in this Warrant.

1.  Please issue the certificate(s), if applicable, for the Units issuable upon such exercise in the name of the undersigned.

3.  Please issue a new Warrant of equivalent form and tenor for the unexercised portion of the attached Warrant in the name of the undersigned.

4.  <u>Investment Representations</u>.  The Units for which this Warrant may be exercised shall be known herein as the "**Warrant Units**".

    (a) The undersigned represents and warrants (1) that it is aware that the Warrant Units has not been and will not be registered under the Securities Act of 1933, as amended (the "**Securities Act**"), or any state securities laws and (2) that reliance by the Company on exemptions under the Securities Act is predicated in part upon the truth and accuracy of the statements of the undersigned in this Notice of Exercise.

    (b) The undersigned represents and warrants that (1) it has been furnished with all information which it deems necessary to evaluate the merits and risks of the purchase of the Warrant Units, (2) it has had the opportunity to ask questions concerning the Warrant Units and the Company and all questions posed have been answered to its satisfaction, (3) it has been given the opportunity to obtain any additional information it deems necessary to verify the accuracy of any information obtained concerning the Warrant Units and the Company, and (4) it has such knowledge and experience in financial and business matters that it is able to evaluate the merits and risks of purchasing the Warrant Units and to make an informed investment decision relating thereto.

    (c) The undersigned hereby represents and warrants that it is purchasing the Warrant Units for its own account for investment and not with a view to the sale or distribution of all or any part of the Warrant Units.

    (d) The undersigned understands that because the Warrant Units has not been registered under the Securities Act, it must continue to bear the economic risk of the investment for an indefinite period of time and the Warrant Units cannot be sold unless it is subsequently registered under applicable federal and state securities laws or an exemption from such registration is available.

(e) The undersigned agrees that it will in no event sell or distribute or otherwise dispose of all or any part of the Warrant Units unless (1) there is an effective registration statement under the Securities Act and applicable state securities laws covering any such transaction involving the Warrant Units, or (2) the Company receives an opinion reasonably satisfactory to the Company of the undersigned's legal counsel stating that such transaction is exempt from registration. The undersigned consents to the placing of a legend on its certificate for the Warrant Units stating that the Warrant Units has not been registered and setting forth the restriction on transfer contemplated hereby and to the placing of a stop transfer order on the books of the Company and with any transfer agents against the Warrant Units until the Warrant Units may be legally resold or distributed without restriction.

(f) The undersigned has considered the federal and state income tax implications of the exercise of the Warrant and the purchase and subsequent sale of the Warrant Units.

(g) The undersigned is an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act.

By:_____

Name: _____

Its:_____

**APPENDIX B**

**Net Issue Election Notice**

To:     Pridewear, LLC

Date:    _____

     2.     The undersigned hereby elects under Section 1(b) of the attached originally executed Warrant to exercise in respect of _____ Units (before giving effect to the net issue pursuant to Section 2(b) of the Warrant). Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Warrant.

     3.     The certificate(s), if applicable, for the Units issuable upon such net issue election shall be issued in the name of the undersigned.

     4.     <u>Investment Representations</u>. The Units for which the Warrant may be exercised shall be known herein as the "**Warrant Units**".

    (a) The undersigned represents and warrants (1) that it is aware that the Warrant Units has not been and will not be registered under the Securities Act of 1933, as amended (the "**Securities Act**"), or any state securities laws and (2) that reliance by the Company on exemptions under the Securities Act is predicated in part upon the truth and accuracy of the statements of the undersigned in this Notice of Exercise.

    (b) The undersigned represents and warrants that (1) it has been furnished with all information which it deems necessary to evaluate the merits and risks of the purchase of the Warrant Units, (2) it has had the opportunity to ask questions concerning the Warrant Units and the Company and all questions posed have been answered to its satisfaction, (3) it has been given the opportunity to obtain any additional information it deems necessary to verify the accuracy of any information obtained concerning the Warrant Units and the Company, and (4) it has such knowledge and experience in financial and business matters that it is able to evaluate the merits and risks of purchasing the Warrant Units and to make an informed investment decision relating thereto.

    (c) The undersigned hereby represents and warrants that it is purchasing the Warrant Units for its own account for investment and not with a view to the sale or distribution of all or any part of the Warrant Units.

    (d) The undersigned understands that because the Warrant Units has not been registered under the Securities Act, it must continue to bear the economic risk of the investment for an indefinite period of time and the Warrant Units cannot be sold unless it is subsequently registered under applicable federal and state securities laws or an exemption from such registration is available.

(e) The undersigned agrees that it will in no event sell or distribute or otherwise dispose of all or any part of the Warrant Units unless (1) there is an effective registration statement under the Securities Act and applicable state securities laws covering any such transaction involving the Warrant Units, or (2) the Company receives an opinion reasonably satisfactory to the Company of the undersigned's legal counsel stating that such transaction is exempt from registration.  The undersigned consents to the placing of a legend on its certificate for the Warrant Units stating that the Warrant Units has not been registered and setting forth the restriction on transfer contemplated hereby and to the placing of a stop transfer order on the books of the Company and with any transfer agents against the Warrant Units until the Warrant Units may be legally resold or distributed without restriction.

(f) The undersigned has considered the federal and state income tax implications of the exercise of the Warrant and the purchase and subsequent sale of the Warrant Units.

(g) The undersigned is an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act.

By:_____

Name: _____

Its:_____