# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIM HAMMOND and<br>MILNEL FOUNDATION, INC., | *<br>*<br>* |
| *Plaintiffs*, | * |
| v. | Civil Action No. RDB-25-336 |
| | * |
| IAN S. LEOPOLD,<br>PRIDEWEAR LLC, and<br>AMERICAN COLLEGIATE SPORTS LLC, | *<br>*<br>* |
| *Defendants*. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

On February 4, 2025, Plaintiffs Kim Hammond and the Milnel Foundation, Incorporated, filed an eight-count Complaint (ECF No. 1) against Defendants Ian S. Leopold, Pridewear LLC, and American Collegiate Sports LLC. The crux of this case is that, from February 2015 to March 2020, Plaintiffs allegedly invested upwards of one million dollars in Defendant Pridewear, a clothing company aimed at first responders. Plaintiffs allege that Leopold, Pridewear's principal, induced them to invest and then mismanaged and misappropriated the funds, causing them to suffer actual damages in excess of one million dollars, plus further consequential damages.

As relevant here, Plaintiffs invested in increments, with at least twelve transfers made over the six-year frame. One of those investments came in the form of Hammond's purchase of $100,000.00 worth of equity in Pridewear via a Common Unit and Warrant Purchase Agreement (the "Agreement") executed April 29, 2019. Among its other terms, the Agreement

1

included a forum-selection clause setting exclusive jurisdiction in the state courts of New York and the United States District Court for the Southern District of New York for all cases "arising out of or based upon" the Agreement. (ECF No. 17-4 at 9 § 6.12)

Presently pending is Defendants' Motion to Dismiss for improper venue or, in the alternative, to transfer this case to the United States District Court for the Southern District of New York. (ECF No. 17) Specifically, Defendants seek dismissal under three theories. First, they argue that this Court is an improper venue under 28 U.S.C. § 1391(b), making dismissal proper under 28 U.S.C. § 1406(a). (ECF No. 17-1 at 11–12) Second, they argue that the forum-selection clause in the Common Unit and Warrant Purchase Agreement is valid and enforceable by dismissing the case. (*Id.* at 12–19) Third, they assert that dismissal is proper because of the doctrine of *forum non conveniens*. (*Id.* at 19–20) Defendants also seek the alternative relief of transfer to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a).

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).[1] The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Clear precedent from the United States Supreme Court controls this case. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). The forum-selection clause in the Common Unit and Warrant Purchase Agreement is valid, enforceable, and covers the

---

[1] Plaintiff Hammond is a Maryland citizen. (ECF No. 18-1 ¶ 2) Plaintiff the Milnel Foundation, Incorporated, is a Maryland charitable foundation incorporated and with its principal office in Maryland. (ECF No. 1 ¶ 4) Hammond is Milnel's principal. (ECF No. 18-1 ¶ 3) Defendant Leopold is a citizen of California. (*Id.* ¶ 1) Defendants Pridewear LLC and American Collegiate Sports LLC are limited liability companies incorporated in Delaware; each company's principal place of business is in California. (*Id.* ¶ 2) The amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). (*Id.* at 15)

entirety of Plaintiffs' Complaint (ECF No. 1). Nevertheless, *Atlantic Marine* instructs that this case should be transferred and not dismissed. *See* 571 U.S. at 52. Accordingly, Defendants' Motion to Dismiss (ECF No. 17) is DENIED. This Court TRANSFERS this case to the United States District Court for the Southern District of New York.

## BACKGROUND

A federal court ruling on a motion to dismiss for improper venue need not accept the pleadings as true. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549–50 (4th Cir. 2006) (quoting *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (4th Cir. 1996)). Rather, a court may "freely consider" outside evidence. *Id.* at 549. Nevertheless, a court "must still draw all reasonable inferences in the light most favorable to the plaintiff." *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 672 (D. Md. 2009).

### I.     General Factual Background

This case arises out of a series of investments that Plaintiffs, Kim Hammond and the Milnel Foundation, Incorporated,[2] made in Defendant Pridewear LLC from February 2015 to March 2020. (ECF No. 1 ¶¶ 7–9) Plaintiffs allege that Defendant Leopold made false misrepresentations which induced them to invest. (*Id.*) The Complaint asserts that on or about January 1, 2015, Leopold initiated discussions with Plaintiffs in which he encouraged them to invest in Pridewear, an apparel company aimed at first responders. (*Id.* ¶ 7) Plaintiffs assert that because of Leopold's false misrepresentations about the use of the funds, they invested a

---

[2] The Complaint (ECF No. 1) does not make clear what the Milnel Foundation's charitable aims are. It states only that Milnel is Maryland a charitable foundation and that Hammond is a trustee and beneficiary. (*Id.* ¶¶ 3–4) In his affidavit, Hammond asserts that he is Milnel's principal. (ECF No. 18-1 ¶ 3)

total $945,075.00 in Pridewear. (*Id.* ¶ 9) Specifically, the Complaint alleges that Plaintiffs invested $333,427.00 to receive convertible debt shares with an annual interest rate and rate of return of eight percent. (*Id.*) They claim that they invested another $611,648.00 to purchase equity in Pridewear. (*Id.*)

The Complaint alleges that Leopold has failed to manage the investments in a reasonable manner and failed to utilize them for their proper purposes. (*Id.* ¶ 10) Instead, Plaintiffs assert, Leopold converted the invested monies, diverting them from their intended uses to the benefit of Defendant American Collegiate Sports LLC, Leopold's personal use, and for the personal uses of other persons associated with Pridewear. (*Id.*) They claim that Defendants have failed to provide any payments of interest on the convertible debt shares or in the form of distributions on the shares of equity. (*Id.*) Finally, Plaintiffs assert that Defendants have failed to keep them apprised of the status of their investments and have refused to return the invested monies as requested by Plaintiffs on January 30, 2025. (*Id.*)

The parties seriously contest the provenance, timing, dollar amount, and number of investments. Both Leopold and Hammond attach affidavits to their pleadings that purport to set out an exact accounting of the monies transferred by Hammond to Pridewear from as early as February 2015 to as late as January 2021.[3] For the purposes of deciding this Motion to

---

[3] Leopold's affidavit asserts that Hammond invested a total of $945,075.00 over twelve payments from February 2015 to March 2020. (ECF No. 17-2 ¶ 19) Both the timing of the investments and the total investment amount are consistent with the Complaint, *see* (ECF No. 1 ¶ 9 ("Over the period of February 2015 through March 2020, . . . Plaintiffs made investments totaling [$945,075.00].")). Nevertheless, Hammond's affidavit, which he attached to the Plaintiffs' Response (ECF No. 18), attests that he personally invested a total of $1,065,075.00 over thirteen discrete payments from August 2017 to January 2021. (ECF No. 18-1 ¶ 10) He also attests that Milnel had separately provided funds to Pridewear "for charitable purposes." (*Id.* ¶ 14)

4

Dismiss for improper venue (ECF No. 17), however, which does not reach the merits of Plaintiffs' claims, the Court focuses solely on the contract at the heart of the Motion.

## II.     The April 29, 2019, Common Unit and Warrant Purchase Agreement

On April 29, 2019, at least eighteen months and at most four years into the ongoing investment relationship between Plaintiffs and Pridewear, Hammond executed a Common Unit and Warrant Purchase Agreement (the "Agreement") with Pridewear. (ECF No. 17-4 at 1–13) To be clear, the Agreement memorializes one investment in a series made over many years.

In the Agreement, Hammond contracted to purchase $100,000.00 worth of equity shares in Pridewear.[4] In exchange, the company represented that it would use the proceeds from the contract to cover business operations, corporate expenses, and working capital needs. (*Id.* at 2, § 1.4) The contract contained a forum selection clause, titled "Dispute Resolution." (*Id.* at 9, § 6.12) That clause dictates unequivocally that the parties "irrevocably and unconditionally submit to the jurisdiction of the state courts of New York and to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement." (*Id.*) It also states that the parties "agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement" except in those courts. (*Id.*) Finally, the clause dictates that the parties waive any claim of a lack of personal jurisdiction, inconvenient forum,

---

[4] In his affidavit, Leopold attests that the April 29, 2019 Common Unit and Warrant Purchase Agreement was in fact a surrender of one of Hammond's $100,000.00 convertible debt notes; and that Hammond surrendered the debt for an equally-valued equity interest in Pridewear. (ECF No. 17-2 ¶ 25) This point goes to the merits and, if at some future point appropriate, damages of the case; it is not necessary to decide this Motion.

or improper venue in the state courts of New York or the Southern District of New York. (*Id.*) The Agreement also contains "Governing Law" clause, which states that the Agreement shall be governed under Delaware law "without regard to the conflict of law principles thereof." (*Id.* at 8 § 6.3)

### III.   Procedural History

On February 4, 2025, Plaintiffs brought this eight-count Complaint. They allege common-law claims of (I) breach of fiduciary duty, (II) negligence, (III) breach of contract, (IV) intentional misrepresentation, (V) negligent misrepresentation, (VI) unjust enrichment, (VII) tortious interference with contractual relations, and (VIII) fraudulent misrepresentation by a fiduciary. *See generally* (ECF No. 1). They seek compensatory damages of $1,130,993.16 plus consequential damages of $500,000.00, for a total of $1,630,993.16. (*Id.* at 15)

By process server, Plaintiffs served the Complaint and Summons on all Defendants on February 5, 2025. (ECF No. 2) They returned those Summons, executed, to the Clerk of Court on May 7, 2025. (ECF No. 4) Because Defendants failed to answer or enter any appearance, Plaintiffs sought an entry of default as to each Defendant. (ECF No. 5) The Clerk of this Court entered default judgment as to all three Defendants on May 8, 2025. (ECF No. 6 (Leopold); ECF No. 8 (Pridewear); ECF No. 10 (American Collegiate)) On May 20, 2025, the Clerk of Court received the undeliverable, returned mail of the Notice of Entry of Default sent to Pridewear and American Collegiate. (ECF No. 12; ECF No. 13) On May 30, 2025, counsel for Defendants entered his appearance. (ECF No. 14) The same day, parties moved jointly to vacate the entries of default judgment. (ECF No. 15) On June 2, 2025, this Court

6

ordered that the default judgments be vacated, and that Defendants file their defenses and objections under Federal Rule of Civil Procedure 12 by June 16, 2025. (ECF No. 16)

On June 16, 2025, Defendants filed the pending Motion to Dismiss for improper venue under Federal Rule of Civil Procedure 12(b)[5] and 28 U.S.C. § 1406(a). (ECF No. 17) They seek, alternatively, to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404. (*Id.*) Defendants argue, first, that the District of Maryland is an improper venue under § 1406(a). (ECF No. 17-1 at 11–12) Second, they argue that the Court should enforce the forum selection clause and dismiss the action under Federal Rule of Civil Procedure 12(b)(1). (*Id.* at 12–19) Third, they argue that the Court should dismiss on the grounds of *forum non conveniens*. (*Id.* at 19) Fourth, they assert that even if dismissal is not awarded, the Court should nevertheless transfer the action to the Southern District of New York under 28 U.S.C. § 1404(a). (*Id.* at 19–20)

In their Response, Plaintiffs assert that the United States Court for the District of Maryland is a proper venue under 28 U.S.C. § 1391(b). (ECF No. 18 at 2) They also argue that the forum selection clause is either inapplicable or unenforceable as to the claims in the case.

---

[5] Defendants are neither clear nor consistent as to which provision of Rule 12(b) they invoke to seek dismissal. In the Motion to Dismiss (ECF No. 17), they simply invoke "Rule 12." The Memorandum of Law in Support of the Motion to Dismiss is slightly more exacting and seeks relief under "[Federal Rule of Civil Procedure] 12(b)(1), (3), or (6) and/or 28 U.S.C. § 1406(a)." (ECF No. 17-1 at 4). The standard of review in the Memorandum of Law discusses Rule 12(b)(3). (*Id.* at 9) Later, in the argument section of the Memorandum of Law, Defendants ask the Court to "decline to exercise" jurisdiction over the case and dismiss pursuant to Rule(b)(1) because of the forum-selection clause. (*Id.* at 15) As explained later in this Opinion, the correct procedural vehicle for a motion to dismiss for improper venue is Rule 12(b)(3), not 12(b)(1) or 12(b)(6). *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). Nevertheless, that distinction has little practical meaning in this case because dismissal is an improper way to enforce a forum-selection clause, for the reasons the Court enunciates below.

(*Id.* at 2–3) Finally, they argue that transfer to the Southern District of New York is neither required nor warranted under 28 U.S.C. § 1404(a).[6] (*Id.* at 3–4) The matter is ripe for review.

## STANDARD OF REVIEW

This Court's jurisdiction is based in diversity of citizenship under 28 U.S.C. § 1332. Therefore, the Court follows Maryland's choice-of-law rules to the threshold question of whether the choice-of-law provision in the Common Unit and Warrant Purchase Agreement applies. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."); *accord Three M Ents., Inc. v. Texas D.A.R. Ents., Inc.*, 368 F. Supp. 2d 450, 457 (D. Md. 2005). Under Maryland's rules, "it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Nat'l Glass, Inc. v. J. C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994). The Common Unit and Warrant Purchase Agreement sets Delaware law as its governing law. (ECF No. 17-4 at 8 § 6.3) The parties do not argue that the choice-of-

---

[6] Plaintiffs also filed a surreply, titled Plaintiffs' Response to Defendents' [sic] Reply in Further Support of Defendants' Motion to Dismiss. (ECF No. 20) This Court's Local Rules dictate that surreply memoranda are not permitted except by order of the Court. Loc. R. 105.2(a) (D. Md. 2025). Nevertheless, the Court has discretion to permit surreplies "'when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quoting *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013)). A surreply is inappropriate when the moving party's reply does not raise new arguments, but rather answers the arguments made by the nonmoving party in their response. *Id.* (quoting *Freeman*, 961 F. Supp. 2d at 801). Here, Plaintiffs did not move for an order from the Court seeking permission to file a surreply. Additionally, following *Clear Channel*, leave to file a surreply would have been inappropriate here because Defendants' Reply (ECF No. 19) does not raise new arguments. *See* 22 F. Supp. 3d at 529 (quoting *Freeman*, 961 F. Supp. 2d at 801). Nevertheless, even if considered, the surreply (ECF No. 20) would not alter the analysis in this case.

law provision is binding. Therefore, the parties' choice-of-law provision applies. As such, the Court evaluates the validity and enforceability of the Agreement's forum-selection clause under Delaware law. In this respect, Delaware law explicitly tracks federal law, instructing that forum-selection clauses are "presumptively valid" and should be enforced unless enforcement would be unreasonable or unjust. *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), in a footnote and mirroring its language). The Court also follows Delaware law on question of the applicability of the forum-selection clause to the whole of Plaintiffs' claims. The Court applies federal law when considering Defendants' requested relief, which they seek under Federal Rule of Civil Procedure 12 and 28 U.S.C. §§ 1404(a) and 1406(a).

## ANALYSIS

Defendants seek dismissal of Plaintiffs' Complaint (ECF No. 1) under three theories. (ECF No. 17-1) First, they allege that dismissal is proper because this Court is an improper forum under 28 U.S.C. § 1406(a). (*Id.* at 11–12) Second, they argue that the forum-selection clause in the Common Unit and Warrant Purchase Agreement is valid and should be enforced by dismissing the action. (*Id.* at 12–19) Third, they argue that the Court should dismiss the case due to the doctrine of *forum non conveniens*. (*Id.* at 19) Alternatively, Defendants invoke the forum-selection clause to seek transfer of this case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a). (*Id.* at 19–20)

The Supreme Court's unanimous holding in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 52 (2013), forecloses all of Defendants' arguments. In that case, a subcontractor sued its general contractor, alleging that

9

the general contractor failed to pay for work performed on the construction of a child-development center at United States Army Fort Hood in Texas. *Id.* at 53. The subcontractor sued in the United States District Court for the Western District of Texas. *Id.* The general contractor moved to dismiss the suit based on a forum-selection clause in the subcontract which had elected the Eastern District of Virginia. *Id.* In the alternative, the general contractor sought a transfer. *Id.* On appeal to the Supreme Court of the United States, the general contractor argued that a party may enforce a forum-selection clause through dismissal under either 28 U.S.C. § 1406 or Federal Rule of Civil Procedure 12(b)(3). *Id.* at 55.

The Court disagreed. It held that, in the absence of "extraordinary circumstances unrelated to the convenience of the parties," the proper way for a district court to enforce a valid forum-selection clause is through transfer to the bargained-for jurisdiction. *Id.* Therefore, as explained further below, *Atlantic Marine* mandates that this Court DENY the Motion to Dismiss (ECF No. 17) and instead TRANSFER the action to the United States District Court for the Southern District of New York. The Court begins its analysis by discussing why dismissal is improper, a decision for which it need not determine the validity and enforceability of the forum-selection clause. Then the Court proceeds to discuss the propriety of transfer under 28 U.S.C. § 1404(a), which requires threshold determinations as to the validity, enforceability, and scope of the clause.

**I.  Dismissal**

    **a.  Venue Under 28 U.S.C. § 1406**

Defendants' first argument for dismissal is that this Court is an improper venue under 28 U.S.C. § 1406(a). Section 1406(a) states that when a case is brought in the "wrong" venue,

10

the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Whether venue is "wrong" for the purposes of § 1406(a) is a question "governed by 28 U.S.C. § 1391." *Atl. Marine*, 571 U.S. at 55. Section 1391(b) states that venue is proper in any federal district court in which: (1) one of the defendants resides, if all defendants resides in the same State; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no other district providing proper venue under § 1391(b), then in any judicial district in which any defendant is subject to personal jurisdiction for that case. *Id.* § 1391(b)(1)–(3). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*

Defendants urge that this Court is an improper venue under § 1391(b) because none of the Defendants resides in Maryland, none of the events or omissions giving rise to the claims occurred in Maryland, and none of the Defendants is subject to this Court's personal jurisdiction. (ECF No. 17-1 at 11) However, § 1391(b)(2) states, in essence, that venue is proper in any district where a substantial portion of the facts creating the claim occurred. The Complaint alleges that, at all relevant times in this case, Hammond was a resident of Maryland and made his investments from Maryland. (ECF No. 1 ¶ 9) Further, Plaintiffs assert that Leopold solicited investments in Maryland. (*Id.*) Finally, Hammond testifies in his affidavit that all his investments were routed through Hammond's Maryland accounting firm, Gorfine, Schiller, and Gardyn. (ECF No. 18-1 at 2) A substantial part of the events giving rise to this

11

claim clearly occurred in Maryland, making venue in this Court proper under 28 U.S.C. § 1391(b)(2). Accordingly, Defendants' argument with respect to improper venue under § 1406 is without merit.

### b. Forum-Selection Clause Under Federal Rule of Civil Procedure 12

Defendants' second argument for dismissal is that the Common Unit and Warrant Purchase Agreement contains a valid forum-selection clause that the Court should enforce by dismissing the case under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 17-1 at 12–19) Almost twenty years ago, the United States Court of Appeals for the Fourth Circuit ruled that motions to dismiss for improper venue are properly considered under Federal Rule 12(b)(3), not Rule 12(b)(1). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). Therefore, Defendants' request for the Court to "decline to exercise" jurisdiction and dismiss "under Rule 12(b)(1)," *see* (ECF No. 17-1 at 15), is improper as it invokes the wrong procedural vehicle.

Even properly sought under Rule 12(b)(3), however, dismissal is not an appropriate method of enforcement of a forum-selection clause. *See Atl. Marine*, 571 U.S. at 61. "When a defendant files [a motion to dismiss based on a forum-selection clause], a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52. Defendants offer no extraordinary circumstances to show why a transfer would be unjust here. Indeed, Defendants seek transfer as an alternative form of relief to dismissal. (ECF No. 17-1 at 19–20). Accordingly, the Court denies Defendants' request to dismiss the case on the basis of the forum-selection clause.

### c. *Forum Non Conveniens*

Defendants' third argument is that dismissal is proper under the doctrine of *forum non conveniens*. That argument suffers from a legal error in that the doctrine of *forum non conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a *state* or *foreign* forum" as transferee. *Atl. Marine*, 571 U.S. at 60 (emphasis added). When, as here, the transferee forum is another federal court, the doctrine does not apply. *Id.* Instead, it is replaced by 28 U.S.C. § 1404, which the *Atlantic Marine* court called Congress's codification of the *forum non conveniens* doctrine for that subset of cases. Because there are two federal venues at issue here, the doctrine is not a valid basis for dismissal. In sum, dismissal is not an appropriate remedy here. The Motion to Dismiss (ECF No. 17) for improper venue is DENIED.

## II. Transfer

Finally, Defendants' Motion to Dismiss seeks the alternative relief of transfer to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (ECF No. 17-1 at 19–20) In ruling on this request, the Court must first determine whether there is a valid and enforceable forum-selection clause. Second, the Court considers whether the clause's scope extends to the whole of Plaintiffs' Complaint (ECF No. 1) As explained below, the forum-selection clause is valid and reaches the entirety of the Complaint. The request for transfer to the parties' bargained-for forum, the Southern District of New York, is GRANTED.

### a. **Validity and Enforceability of the Forum-Selection Clause**

As discussed above, Delaware follows federal law on the validity and enforceability of forum-selection clauses. *See Ingres Corp.*, 8 A.3d at 1146. As such, the Court analyzes the forum-

selection clause in the Common Unit and Warrant Purchase Agreement under federal law.[7] The Supreme Court has long held that forum-selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). *The Bremen*'s presumption of validity and enforceability "applies only if the forum-selection clause is mandatory rather than permissive." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018) (citing *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650–51 (4th Cir. 2010)). "A mandatory clause requires litigation to occur in a specified forum." *Id.*

Mandatory forum-selection provisions may nevertheless "be found unreasonable," and thus unenforceable, "if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *The Bremen*, 407 U.S. at 10).

Applied here, this is a mandatory forum-selection clause, as it clearly requires litigation to be brought in one of two specified fora. (ECF No. 17-4 at 9 § 6.12) In the Common Unit and Warrant Purchase Agreement, the parties "agree[d] not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of

---

[7] The parties do not dispute this approach and it is reflected in their briefing. (ECF No. 17-1 at 9; ECF No. 18 at 3)

New York or the United States District Court for the Southern District of New York." (*Id.*) Therefore, the presumption of validity and enforceability applies to this mandatory clause.

As concerns reasonableness, Plaintiffs do not argue that enforcing the forum-selection clause would be unreasonable under any of the four grounds listed in *Lloyd's of London*. Instead, Plaintiffs argue, without any supporting caselaw, that the enforcement of this forum-selection provision would be "patently unreasonable and unfair" because it comes from a contract covering $100,000.00 of a series of investments approaching $1 million. (ECF No. 18 ¶ 8) This clause was part of a negotiated contract by the parties for the purchase of equity in a business. As noted above, by the time this contract was executed on April 29, 2019, the parties had been engaged in an investment relationship for at least eighteen months and perhaps as long as four years. Plaintiffs agreed to be bound by those terms, including the forum-selection clause, as the Agreement includes a merger clause setting its terms as the "full and entire understanding and agreement between the parties with respect to the subject matter hereof." (ECF No. 17-4 at 9, § 6.11) In sum, this mandatory forum-selection clause is valid and reasonable.

### b. Scope of Forum-Selection Clause

The forum-selection clause at issue comes from the April 29, 2019, Common Unit and Warrant Purchase Agreement. *See generally* (ECF No. 17-4). The Agreement is a contract for the one-time investment of $100,000.00. Defendants argue, nevertheless, that the forum-selection clause in the Agreement "encompasses all claims and all parties to the action." (ECF No. 17-1 at 15) In support of their claim, they point to the forum-selection clause itself, which says that the state courts of New York and the United States District Court for the Southern

District of New York are the proper fora "for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement." (ECF No. 17-1 at 15 (quoting ECF No. 17-4 at 9 § 6.12)). In Response, Plaintiffs contend that the forum-selection clause cannot sweep in all the claims and parties because it relates only to "$100,000.00 of the over $1,000,000[.00]" they claim is at issue in the case. (ECF No. 18 at 3) As noted above, the Court applies Delaware law here because the parties' choice-of-law clause in the Agreement governs. *See Nat'l Glass*, 650 A.2d at 248.

Delaware courts read contract language like "arising out of or based upon" broadly. *See, e.g.*, *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 757 (Del. Ch. 2023); *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1081 (Del. Ch. 2021); *CA, Inc. v. Ingres Corp.*, No. 4300-VCS, 2009 WL 4575009, at *46 n.290 (Del. Ch. Dec. 7, 2009); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 294–95 (Del. 1999). In *Elf Atochem*, a shareholder in an aerospace and aviation chemicals manufacturer sued the manufacturer and its chief executive for breach of fiduciary duty and mismanagement of funds, among other alleged harms, in the Delaware Court of Chancery. *Id.* at 288–89. The plaintiff based its claims in the company's LLC agreement. *Id.* at 289. The Court of Chancery granted defendants' motion to dismiss for lack of subject matter jurisdiction because, as relevant here, the forum-selection clause in the LLC agreement set exclusive jurisdiction in the state and federal courts of California for "any action on a claim arising out of, under or in connection with" the contract in that case. *Id.* On appeal, the Supreme Court of Delaware concluded that the clause's language had broad meaning and therefore found that all the claims in the case, even those not arising under the contract

16

containing the forum-selection clause, were bound by the clause's placement of jurisdiction in the federal and state courts of California. *Id.* at 294–95.

Applied here, the forum-selection clause in the Common Unit and Warrant Purchase Agreement clearly encompasses all claims and parties in this action. Though Plaintiffs bring eight different counts in the Complaint, each count either directly arises out of the Agreement or is based upon it. All the claims in this case center on the investment relationship between Plaintiffs and Defendants. Just as in *Elf Atochem*, the parties' bargained-for forum-selection clause covers the entirety of this case.

### c. Transfer Under 28 U.S.C. § 1404(a)

Having determined that the forum-selection clause is valid, enforceable, and applies to all of the claims and parties in this case, the Court next analyzes Defendants' alternative request of transfer to the United States District Court for the Southern District of New York. (ECF No. 17-1 at 19–20) "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court may also transfer a case to "any other district to which the parties have agreed by contract or stipulation." *Atl. Marine*, 571 U.S. at 59.

As noted above, *Atlantic Marine* creates a clear rule that a valid forum-selection clause must be enforced by transfer under § 1404(a) "to the forum specified in that clause" in all but "extraordinary circumstances." *Id.* at 62. *Id.* at 52. Though federal district courts normally have broad discretion to rule on motions to transfer, *see Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), that discretion is limited in cases where there is an enforceable forum-selection clause. *See Atl. Marine*, 571 U.S. at 62. Such a clause "'represents the parties' agreement as to the most

17

proper forum.'" *Id.* at 63 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Therefore, "'a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* at 63 (alteration in original) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

In a typical case seeking transfer under § 1404(a) and which does not involve a forum-selection clause, a district court applies a balancing test of fact-specific factors.[8] *See, e.g.*, *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 133 (D. Md. 2024) (applying the balancing test). When a case involves a valid forum-selection clause, however, *Atlantic Marine* mandates that district courts alter the normal § 1404(a) analysis in three ways. 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight." Instead, plaintiffs must show that transfer to the bargained-for forum is "unwarranted." *Id.* Second, a court "should not consider arguments about the parties' private interests." *Id.* at 64. The parties may raise "public-interest factors only." *Id.* Third, a § 1404(a) transfer in these circumstances "will not carry with it the original venue's choice of law rules." *Id.* Instead, the choice-of-law rules of the transferee forum—the bargained-for forum—will apply. *Id.* (citing *Van Dusen*, 376 U.S. at 639). At bottom, in almost all cases the district court should transfer the case. *Id.* at 62.

In their Response (ECF No. 18), Plaintiffs do not offer evidence of the exceptional factors necessary to cause the cause the Court to avoid transferring this case. In fact, Plaintiffs reference factors which *Atlantic Marine* explicitly prohibits the Court from considering. (*Id.* at

---

[8] "District courts in [the Fourth Circuit] consider four factors when deciding to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (collecting cases).

18

4) Given that Plaintiffs have not overcome their high burden of showing why the forum-selection clause should not be honored, this Court must TRANSFER the case to the forum that the parties selected in the Common Unit and Warrant Purchase Agreement, the United States District Court for the Southern District of New York.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for improper venue (ECF No. 17) is DENIED. This case shall be TRANSFERRED to the United States District Court for the Southern District of New York.[9]

A separate Order follows.

Date: December 1, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge

---

[9] Defendants' additional request for costs and attorney's fees (ECF No. 17) in connection with this case is DENIED.