UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KIM HAMMOND; and MILNEL FOUNDATION, :
INC.                                : Case No. 1:25-cv-10002-RA
                                    :
                    Plaintiffs,     :
                                    :
        -against-                   :
                                    :
IAN S. LEOPOLD; AND PRIDEWEAR, LLC  :
                                    :
                    Defendants.     :
                                    :
------------------------------------------------------------x

# DEFENDANTS IAN S. LEOPOLD AND PRIDEWEAR LLC'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**
John M. Bradham
Peter B. Katzman
400 Madison Avenue, Suite 17D
New York, New York 10017
Tel. No.: (212) 695-8050

*Attorneys for Defendants Ian S. Leopold and Pridewear LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

    A.      Formation and Operating Agreement of Pridewear............................................................ 1

    B.      Hammond's Investment in Pridewear................................................................................. 4

ARGUMENT .................................................................................................................................. 7

    A.      The FRCP Rule 12 Standard............................................................................................... 7

    B.      The Diversity Jurisdiction Standard and LLC Citizenship ................................................ 8

    C.      Hammond is a Member of Pridewear .................................................................................. 9

CONCLUSION............................................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

Delacruz v. New You Bariatric Group, LLC,
  2025 WL 3677145 (S.D.N.Y. Dec. 18, 2025) ..................................................................7

Dumann Realty, LLC v. Faust,
  No. 09 CIV. 7651 JPO, 2013 WL 30672 (S.D.N.Y. Jan. 3, 2013) ...................................8

E & T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC,
  No. 19 CIV. 8069 (AT), 2022 WL 623858 (S.D.N.Y. Mar. 2, 2022) ...............................8

Finger Lake LLC v. Qiang Tu,
  2020 WL 2555250 (S.D.N.Y. May 20, 2020) .................................................................8

Hai Yang Liu v. 88 Harborview Realty, LLC,
  5 F.Supp.3d 443 (S.D.N.Y. 2014) ..................................................................................8

Milhouse v. Morgan & Morgan P.A.,
  No. 23 CIV. 7016 (KPF), 2025 WL 3633309 (S.D.N.Y. Dec. 12, 2025) ......................7-8

Sonix Carriers, Inc. v. SVES LLC,
  No. 23-CV-7741-LTS, 2024 WL 2330843 (S.D.N.Y. May 21, 2024) ..............................7

**OTHER AUTHORITIES**

28 U.S.C. § 1332 ............................................................................................................8

DE LLC Act § 18-101 ................................................................................................9-11

DE LLC Act § 18-301 .....................................................................................................9

FRCP Rule 12 ............................................................................................................1, 7

Defendants Ian S. Leopold ("Leopold") and Pridewear LLC ("Pridewear"; collectively, with Leopold, the "Defendants") submit this memorandum of law in support of their motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(h)(3). As set forth below, there is no diversity jurisdiction present because Plaintiff Kim Hammond ("Hammond") is a member of Pridewear and therefore cannot be diverse from Pridewear.

## PRELIMINARY STATEMENT

It is well established law that for purposes of diversity jurisdiction, a limited liability company (LLC) has the citizenship of each of its members. Accordingly, if a plaintiff is a member of a defendant LLC, there can be no diversity jurisdiction because the plaintiff and defendant have the same citizenship.

Hammond invested in Pridewear, a Delaware LLC, through (i) the issuance of convertible promissory notes which subsequently converted into membership units of Pridewear and (ii) the purchase of membership units of Pridewear and warrants for the right to purchase additional membership units of Pridewear. Pursuant to the terms of Pridewear's operating agreement, upon the acquisition of membership units by Hammond, Hammond was admitted as a member of Pridewear. Pridewear's operating agreement was therefore amended to list Hammond as a member. Accordingly, Hammond is a member of Pridewear.

In sum, there is no diversity jurisdiction because Hammond is a member of Pridewear and therefore cannot be diverse from Pridewear. Defendants' motion to dismiss for lack of subject matter jurisdiction should therefore be granted.

## STATEMENT OF FACTS

### A. Formation and Operating Agreement of Pridewear

On May 17, 2012, Pridewear was formed as a Delaware LLC under the name American Collegiate Sports and Fitness, LLC.  Declaration of Ian S. Leopold ("Leopold Declaration"), ¶ 2; Exhibit A[1].  On March 11, 2014, the name of the company was changed to Pridewear. *Id*.

On December 1, 2012, the members of Pridewear, which at the time consisted of Leopold, Christophe Karvelis ("Karvelis"), John Meinke ("Meinke") and David Staub ("Staub"), entered into an operating agreement for Pridewear ("Operating Agreement").  Leopold Declaration, ¶ 3; Exhibit B.  At the time of the initial Operating Agreement, Leopold owned 85% of the membership interests in Pridewear and Karvelis, Meinke and Staub each owned 5% of the membership interests.  Leopold Declaration, ¶ 4.  Since Pridewear's formation, Leopold has always owned a majority of the membership interests of Pridewear.  *Id*.  The Operating Agreement also named Leopold as the sole Manager, Chairman and Chief Executive Officer of Pridewear.  Leopold Declaration, ¶ 5; Exhibit B.

Section 3.2(a) of the Operating Agreement provides that Pridewear may issue Units to additional persons upon such terms and conditions as determined by the Manager.  Exhibit B, Section 3.2(a).  Article 1 of the Operating Agreement defines "Unit" as "a unit of ownership in the Company entitling the Member holding such Unit to an economic interest and a voting interest in the Company." *Id*., Article 1.  A Unit thus represents a membership interest in Pridewear.

Section 3.2(b) of the Operating Agreement provides that each new member shall be required to sign a consent agreeing to be subject to and bound by the terms and conditions of the Operating Agreement, the form of which is attached as Exhibit D to the Operating Agreement. *Id*., Section 3.2(b).

---

[1] References to Exhibits are to Exhibits to the Leopold Declaration.

2

Section 8.2 of the Operating Agreement specifically deals with the transfer of membership interests and when a person becomes admitted as a member. Exhibit B, Section 8.2. Section 8.2 originally provided, in part, that a person may acquire membership interests directly from Pridewear upon the written consent of all members and that a person who acquires membership interests in accordance with Section 8.2 shall be admitted as a member of Pridewear after the person has agreed to be bound by the terms of the Operating Agreement by executing a consent in the form of Exhibit D to the Operating Agreement. In other words, in accordance with Sections 3.2(b) and 8.2, the Operating Agreement originally contemplated that a person may only become a member upon executing a consent agreeing to be bound by the Operating Agreement.

In 2018, however, Pridewear amended its Operating Agreement to remove this requirement. On December 11, 2018, Leopold, as a holder of a majority interest of the Units of Pridewear[2], executed an Amendment to Operating Agreement ("2018 Amendment"). Exhibit C. The 2018 Amendment amends Section 8.2 of the Operating Agreement, which is the only provision in the Operating Agreement to address the admission of members, to provide, in part:

> A person may acquire Membership Interests directly from [Pridewear] upon the written consent of the Member(s) holding a majority interest of the Units of Pridewear, LLC. A person who acquires Membership Interests in accordance with this section shall be admitted as a Member of the Company.

Exhibit C. Accordingly, this amendment makes two changes to the Operating Agreement: 1) only a majority consent of the members instead of unanimity is needed for someone to acquire membership interests; and 2) member admission is automatic upon an acquisition and a member consent is no longer required for admission. The primary intent of the 2018 Amendment was to

---

[2] Section 11.2 of the Operating Agreement provides that the Operating Agreement, with certain exceptions, may be amended by a written instrument signed by the members holding a majority interest of the Units. Exhibit B, Section 11.2.

3

ensure that any person that acquired Units in Pridewear automatically became a member of Pridewear without the need to sign any consent or joinder to the Operating Agreement. Leopold Declaration, ¶ 7.

On March 31, 2020, Pridewear further amended its Operating Agreement to update the list of members on Exhibit A of the Operating Agreement ("2020 Amendment").  Exhibit D. As set forth on the updated Exhibit A, Hammond is listed as a member of Pridewear and, as of March 31, 2020, the owner of 616,996 Units, representing 4.42% of the membership interests of Pridewear.

### B. Hammond's Investment in Pridewear

On January 28, 2015, Hammond purchased a convertible promissory note ("Convertible Note") in the principal amount of $100,000 from Pridewear pursuant to a Convertible Note Purchase Agreement. Leopold Declaration, ¶ 9; Exhibits E and F.  The Convertible Note was subsequently issued on February 2, 2015. *Id*.; Amended Complaint, ¶ 23. As alleged in the Amended Complaint, Hammond made four additional loans from May 2015 through April 2018 for the principal amount of $233,427 under the same terms as the Convertible Note.  Leopold Declaration, ¶ 9; Amended Complaint, ¶¶ 24-25.

The Convertible Notes were convertible into membership interests of Pridewear.  The Convertible Notes start with a Securities Act disclaimer that begins with "THIS CONVERTIBLE PROMISSORY NOTE AND THE MEMBERSHIP INTERESTS ISSUABLE UPON CONVERSION…"  Exhibit E.

Section 2 of the Convertible Notes provides for conversion under three different circumstances: (a) automatic conversion upon an equity financing of at least $1 million; (b) permissive conversion upon a change of control, and (c) permissive conversion upon maturity. Exhibit E, Section 2.

Specifically, Section 2(a) of the Convertible Notes, which provides for automatic conversion upon an equity financing, provides, in part:

> **Conversion Upon Next Equity Financing**. The entire principal amount of and accrued interest on this Note shall be converted into the class or series of membership interests of the Company (the "Units") issued and sold at the close of the Company's next equity financing in a single transaction or a series of related transactions yielding gross proceeds to the Company at least $1,000,000 in the aggregate (not including the conversion of the Notes) (the "Next Equity Financing").

Accordingly, upon an equity financing with gross proceeds of at least $1 million, the Convertible Notes automatically convert into membership interests (Units) of Pridewear.[3]

In addition to purchasing the Convertible Notes, Hammond also acquired membership interests and warrants directly from Pridewear pursuant to a Common Unit and Warrant Purchase Agreement dated April 29, 2019 ("Purchase Agreement") between Hammond (and other purchasers) and Pridewear. Leopold Declaration, ¶ 13; Exhibit G; Amended Complaint, ¶¶ 42-44. Leopold, in his capacity as a majority member and manager of Pridewear, executed the Purchase Agreement on behalf of Pridewear. Leopold Declaration, ¶ 13; Exhibit G.

Pursuant to the Purchase Agreement, each purchaser, including Hammond, agreed to purchase Units (as defined in the Operating Agreement) of Pridewear at a purchase price of $2.00 per Unit and such purchaser would also receive warrants to purchase Units ("Warrants") in the

---

[3] Hammond alleges in the Amended Complaint that if the Convertible Notes were converted into equity, he was required to endorse the Convertible Notes and surrender them at Pridewear's principal offices or at the offices of Pridewear's transfer agent and that Pridewear was required to provide certificates or other documentation for the equity that Hammond is entitled to upon conversion, which he alleges did not happen. Amended Complaint, ¶¶ 27-30. While Defendants dispute this allegation, it is irrelevant as Section 2(d) of the Convertible Notes provide that these are administrative procedures that are to take place "upon conversion of this Note…"; i.e. after conversion has already occurred.

amount of 25% of the Units purchased at an exercise price of $3.00 per Unit. Exhibit G, Section 1.1.

From April 30, 2019 through March 26, 2020 (the date of the 2020 Amendment), in accordance with the Purchase Agreement, Hammond acquired 305,824 Units of Pridewear and 76,456 Warrants. Leopold Declaration, ¶ 15; Exhibit G; Amended Complaint, ¶ 44. Since the 2020 Amendment, Hammond acquired an additional 47,500 Units and 11,875 Warrants pursuant to the Purchase Agreement. Leopold Declaration, ¶ 15. Pursuant to Section 8.2 of the Operating Agreement (as amended by the 2018 Amendment), Hammond was automatically admitted as a member of Pridewear upon the acquisition of his Units.

On March 26, 2020, the Convertible Notes of 21 noteholders, including Hammond, were automatically converted into Units of Pridewear pursuant to Section 2(a) of the Convertible Notes. Leopold Declaration, ¶ 16; Exhibit E. In accordance with such conversion, Hammond's Convertible Notes were converted into 311,172 Units of Pridewear. *Id*. The event triggering this conversion was Pridewear's issuance and sale of Units to investors, including Hammond, pursuant to the Purchase Agreement, resulting in aggregate gross proceeds in excess of $1 million. *Id.*; Exhibit E, Section 2(a).

As of January 26, 2021 and through the date hereof, Hammond owns 664,496 Units of Pridewear, consisting of 353,324 Units acquired pursuant to the Purchase Agreement and 311,172 Units that were converted from his Convertible Notes. Leopold Declaration, ¶ 17.

Hammond and the other noteholders were well aware of the conversion of their Convertible Notes to Pridewear's membership interests. Leopold Declaration, ¶ 18. In the almost six years since the Convertible Notes were converted, no other noteholder has alleged that their Convertible Notes did not convert into equity or that they were not admitted as members of Pridewear. *Id*.

Hammond has long been involved in the business of Pridewear. Leopold Declaration, ¶ 19. He has participated in many discussions about the business of Pridewear with Leopold, other members of Pridewear and third parties. *Id.* Hammond has also regularly received K-1s for his equity investment in Pridewear. *Id.*; Exhibit H.

## ARGUMENT

### A. The FRCP Rule 12 Standard

"A district court may only hear a case that it has the statutory or constitutional power to adjudicate…If the court lacks that authority, it must dismiss the case for lack of subject matter jurisdiction." *Milhouse v. Morgan & Morgan P.A.*, No. 23 CIV. 7016 (KPF), 2025 WL 3633309, at *2 (S.D.N.Y. Dec. 12, 2025) (internal citations omitted).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Sonix Carriers, Inc. v. SVES LLC*, No. 23-CV-7741-LTS, 2024 WL 2330843, at *2 (S.D.N.Y. May 21, 2024); *see also Delacruz v. New You Bariatric Group, LLC*, 2025 WL 3677145, at *2 (S.D.N.Y. Dec. 18, 2025) ("The party invoking federal jurisdiction has the burden of proving that subject matter jurisdiction exists."). In determining a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,…but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Sonix*, *supra*, at *2. Accordingly, this Court "may decide whether subject matter jurisdiction exists on the basis of affidavits or other evidence, and no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Id*.

7

### B.     The Diversity Jurisdiction Standard and LLC Citizenship

Pursuant to 28 U.S.C. § 1332(a)(1), "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States." Accordingly, a case falls within this Court's original diversity jurisdiction "only if diversity of citizenship among the parties is complete, i.e. only if there is no plaintiff and no defendant who are citizens of the same State." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F.Supp.3d 443, 446 (S.D.N.Y. 2014); *see also Finger Lake LLC v. Qiang Tu*, 2020 WL 2555250, at *3 (S.D.N.Y. May 20, 2020).

For purposes of diversity jurisdiction, a limited liability company such as Pridewear has the citizenship of each of its members. *Milhouse*, *supra*, 2025 WL 3633309, at *3. "Where a member of an LLC sues the LLC, that member's citizenship is taken into account for the purposes of determining the LLC's membership…Thus, in general, a plaintiff who is a member of an LLC cannot bring a diversity action against the LLC." *Hai Yang Liu*, *supra*, 5 F.Supp.3d at 450; *see also Finger Lake LLC*, *supra*, 2020 WL 2555250, at *5 (Court lacks diversity jurisdiction where an LLC and a member of that LLC are on opposing sides of litigation).

"The question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation." *Dumann Realty, LLC v. Faust*, No. 09 CIV. 7651 JPO, 2013 WL 30672, at *2 (S.D.N.Y. Jan. 3, 2013); *see also E & T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC*, No. 19 CIV. 8069 (AT), 2022 WL 623858, at *6 (S.D.N.Y. Mar. 2, 2022) ("The operative question is whether Schaff was a "member" of [Defendant] on the date the complaint in this action was filed...This question is ultimately governed by the law of the state of incorporation.").

8

Pridewear was formed in Delaware. Exhibit A. Accordingly, Delaware law determines the citizenship of the members of Pridewear. Section 18-101(13) of the Delaware Limited Liability Company Act (the "LLC Act") defines a "Member" as "a person who is admitted to a limited liability company as a member as provided in § 18-301 of [the LLC Act]." Section 18-301(b) of the LLC Act provides that a person is admitted as a member of an LLC either (i) at the time provided in and upon compliance with the Company's operating agreement, or (ii) if the operating agreement does not so provide, upon the consent of all members.

C.     **Hammond Is A Member of Pridewear**

As set forth above, Hammond is a member of Pridewear in accordance with the Operating Agreement as amended by the 2018 and 2020 Amendments. Exhibit A of the Operating Agreement (as amended by the 2020 Amendment) lists Hammond as a member of Pridewear and the owner of 616,996 Units, representing 4.42% of the membership interests of Pridewear. Exhibit D. As of the 2020 Amendment, Hammond's membership interests consisted of 305,824 Units that he acquired pursuant to the Purchase Agreement and 311,172 Units that were converted from his Convertible Notes. Leopold Declaration, ¶¶ 15-16. Since the 2020 Amendment, Hammond acquired an additional 47,500 Units pursuant to the Purchase Agreement. Leopold Declaration, ¶ 15.

From April 30, 2019 through January 26, 2021, in accordance with the Purchase Agreement, Hammond acquired 353,324 Units of Pridewear and 88,331 Warrants. Leopold Declaration, ¶¶ 15, 17; Exhibit G; Amended Complaint, ¶ 44.

On March 26, 2020, the Convertible Notes of 21 noteholders, including Hammond, were automatically converted into Units of Pridewear pursuant to Section 2(a) of the Convertible Notes. Leopold Declaration, ¶ 16; Exhibit E. In accordance with such conversion, Hammond's

9

Convertible Notes converted into 311,172 Units of Pridewear. *Id*. The event triggering this conversion was Pridewear's issuance and sale of Units to investors, including Hammond, pursuant to the Purchase Agreement, resulting in aggregate gross proceeds in excess of $1 million. *Id*. at ¶ 16; Exhibit E, Section 2(a).

Hammond has not alleged that he has ever sold any of his Units of Pridewear. Accordingly, as of January 26, 2021 and through the date hereof, Hammond is the owner of 664,496 Units of Pridewear, consisting of 353,324 Units acquired pursuant to the Purchase Agreement and 311,172 Units that were converted from his Convertible Notes. Leopold Declaration, ¶ 18.

Section 8.2 of the Operating Agreement (as amended by the 2018 Amendment) makes it clear that a person that acquires membership interests in Pridewear upon the written consent of the member holding a majority interest of the Units of Pridewear (i.e. Leopold) is automatically admitted as a member of Pridewear. There can be no dispute that Leopold consented to Hammond acquiring membership interests in Pridewear as Leopold signed the Convertible Note, the Convertible Note Purchase Agreement, and Purchase Agreement in his capacity as a member and manager of Pridewear. Exhibits E-G. Accordingly, once Hammond acquired the Units, through both the direct acquisition under the Purchase Agreement and the conversion of his Convertible Notes, he was admitted as a member of Pridewear.

As a further matter, Hammond was long treated as a member of Pridewear. Hammond regularly received K-1s regarding his membership interests in Pridewear, and was actively involved in Pridewear and its operations. Leopold Declaration, ¶ 19.

Hammond alleges in the Amended Complaint that he did not sign the Operating Agreement or agree to be bound by it. Amended Complaint, ¶ 45. However, Section 18-101(9) of the LLC Act provides that a member of an LLC is bound by the operating agreement whether or not the

member executes the operating agreement. Accordingly, regardless of whether Hammond signed the Operating Agreement, Hammond is still bound by the terms and conditions of the Operating Agreement as a member of Pridewear.

In sum, pursuant to the Operating Agreement and its amendments, Hammond has been admitted as a member of Pridewear. Accordingly, there is not complete diversity between Hammond and Pridewear, and this matter should therefore be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their motion to dismiss for lack of subject matter jurisdiction be granted.

Dated: New York, NY
February 18, 2025

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**

By: /s/ John M. Bradham
John M. Bradham
Peter B. Katzman
400 Madison Avenue, Suite 17D
New York, New York 10017
Tel. No.: (212) 695-8050

*Attorneys for Defendants Ian S. Leopold and Pridewear LLC*