UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

KIM HAMMOND; and MILNEL FOUNDATION, :
INC.                                              :          Case No. 1:25-cv-10002-RA
                                                  :
                        Plaintiffs,               :
                                                  :
        -against-                                 :
                                                  :
IAN S. LEOPOLD; AND PRIDEWEAR, LLC     :
                                                  :
                        Defendants.               :
                                                  :
------------------------------------------------------------------x

**DEFENDANTS IAN S. LEOPOLD AND PRIDEWEAR LLC'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**
John M. Bradham
Peter B. Katzman
400 Madison Avenue, Suite 17D
New York, New York 10017
Tel. No.: (212) 695-8050

*Attorneys for Defendants Ian S. Leopold and
Pridewear LLC*

Defendants Ian S. Leopold ("Leopold") and Pridewear LLC ("Pridewear") hereby Reply to Plaintiffs' Response To Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Opposition"). As set forth herein and in Defendants' Memorandum of Law in Support of Their Motion ("Defendants' Brief"), there is no diversity jurisdiction because Plaintiff Kim Hammond ("Hammond") is a member of Pridewear.

### PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint is filled with conclusory and baseless allegations of fraud based at most on "projections". Consistent therewith, Plaintiffs' Opposition makes more baseless allegations of fraud without any evidentiary support, and contends that the 2018 and 2020 Amendments ("Amendments") to Pridewear's Operating Agreement are surrounded by "an indicia of fraud" because Leopold's Maryland Affidavit in support of the motion to dismiss or transfer for lack of venue included an unsigned draft of the Operating Agreement without the Amendments.

Plaintiffs' baseless contentions regarding the foregoing do not warrant jurisdictional discovery. First, the draft of the Operating Agreement attached to Leopold's Maryland Affidavit has only very minor differences in the exhibits from the final Operating Agreement attached to his Declaration filed in this Court, which are immaterial to the issues at hand. Second, Leopold did not include the Amendments to his Maryland Affidavit as they had no relevance to the issue before the Maryland Court – the motion to dismiss or transfer for lack of venue. Lastly, Defendants have submitted ample proof demonstrating that the Amendments are valid and were properly made in accordance with Delaware law and the Operating Agreement.

Plaintiffs' other contentions for why the Court should order jurisdictional discovery are that Pridewear did not observe certain corporate formalities or comply with its Operating

Agreement.  Plaintiffs' contentions are both erroneous and irrelevant to the issue of subject matter jurisdiction, and lacking evidentiary support.

Plaintiffs do not explain what jurisdictional discovery they contend is necessary other than one general, equivocal sentence. In short, Plaintiffs are simply hoping to engage in a pointless fishing expedition.

Lastly, Plaintiffs contend that Pridewear is not a necessary or indispensable party so it can be dropped as a Defendant to preserve diversity jurisdiction, which is fair because Plaintiffs should not have to litigate their case in state court after a year of litigation.  Defendants' contentions are without merit.  First, Pridewear is obviously an indispensable party in this case.  It is a defendant in five of six of Plaintiffs' claims and a key party to the sixth claim for tortious interference against Leopold for interfering with contracts between Pridewear and Hammond.  Second, contrary to Plaintiffs' baseless contentions, Pridewear is not "merely the conduit for Leopold's fraud" or "a shell company".  Not only have Plaintiffs shown no basis whatsoever for their allegations of fraud based on "projections", but Pridewear is not a shell company.  Rather, it is an operating company with 21 members.  Third, the year of litigation consisted of Plaintiffs filing this action in an improper venue and already amending their complaint once in this Court to drop a defendant and attempt to shore up their allegations of subject matter jurisdiction and fraud.  There has been no discovery in either Court.

In sum, there is plainly no diversity jurisdiction and granting Plaintiffs jurisdictional discovery will simply waste more judicial and legal resources.

## ARGUMENT

### I.    There is No Basis For Jurisdictional Discovery

Plaintiffs attempt to obfuscate the fact that there is no diversity jurisdiction and gain jurisdictional discovery by making a mishmash of meritless and irrelevant allegations without evidentiary support.

### A. Plaintiffs' Contentions That There Is An "Indicia Of Fraud" Surrounding The Amendments Are Without Merit

In an effort to persuade the Court to grant jurisdictional discovery, Plaintiffs contend that there is an "indicia of fraud" surrounding the Amendments because Leopold's Maryland Affidavit attached an unsigned draft of the Operating Agreement and did not include the Amendments. Plaintiffs' contentions are baseless.  As stated in the Leopold Declaration submitted with Defendants' Brief, (i) an earlier unsigned draft of the Operating Agreement was inadvertently attached, and (ii) the Amendments were not relevant to the prior motion.  Leopold Declaration, ¶¶3, 8.

The unsigned draft of the Operating Agreement is virtually the same as the signed, final version attached to Leopold's Declaration filed in this Court.  The only differences are that in the exhibits to the final version: (i) one Member was added, (ii) the ownership percentages were slightly modified, and (iii) Leopold became the sole Manager.  These differences are immaterial to the present issues.  With respect to the Amendments, as the Manager and majority Member of Pridewear, Leopold had every right to amend the Operating Agreement, as discussed below.

Regardless, the Leopold Declarations and the Declarations of Allen Patapoff ("Patapoff"), Christophe Karvelis ("Karvelis"), Zachary Prensky ("Prensky"), Caryn Smith ("Smith") and Uria Espinoza Leopold ("Uria") amply demonstrate that Plaintiffs' contentions regarding the Amendments are baseless. Leopold explains in his Supplemental Declaration how the 2018

3

Amendment came about in late 2018.  Supplemental Declaration, ¶¶3-7.  Patapoff declares in his

Declaration that he participated in the November 2018 conference call discussing the proposed

2018 Amendment.  Karvelis, a Member of Pridewear, Prensky, a trustee of one of Pridewear's

Members, and Smith, a member of Pridewear's Advisory Board, each declare in their Declarations

that in December 2018, they spoke with Leopold regarding the 2018 Amendment and supported

it.

Leopold further states in his Declarations that (i) on March 26, 2020, the convertible

promissory notes ("Convertible Notes") of 21 noteholders, including Hammond, converted into

Units of Pridewear, (ii) pursuant to Section 8.2 of the Operating Agreement (as amended by the

2018 Amendment), those noteholders automatically became Members of Pridewear and (iii) on

March 31, 2020, Leopold executed the 2020 Amendment pursuant to Section 11.2(c) to update

Exhibit A of the Operating Agreement to reflect the Members, including Hammond.  Leopold

Declaration, ¶¶8, 16; Supplemental Declaration, ¶14. Uria declares in her Declaration that in

March 2020, she created the updated Member list attached to the 2020 Amendment.

Moreover, Plaintiffs have not submitted any evidence that they ever requested the

Operating Agreement or the Amendments.  Regardless, Plaintiffs' failure to request or receive such

documents is not relevant to whether Hammond is a Member of Pridewear.  See *Lower Manhattan

Dialysis Center, Inc. v. Lantz*, 2007 WL 2789266 (S.D.N.Y. Sept. 25, 2007) (documentary evidence

of membership trumps claims that party was not told about another's membership or that they were

prevented from inspecting business records).

Lastly, it is not credible that Hammond did not know he was a Member of Pridewear.

Hammond invested in Pridewear through the purchase of membership units, warrants and

Convertible Notes.  As stated in Defendants' Brief, he received K-1s for years 2020-24, and was

actively involved in Pridewear and its operations, regularly speaking with Leopold.  Leopold Declaration, ¶19; Supplemental Declaration, ¶16.  Hammond's allegations otherwise lack any evidentiary support.

### B. Plaintiffs' Contentions That The Amendments Are Contrary To The Operating Agreement Are Without Merit

In a further effort to discredit the Amendments to gain jurisdictional discovery, Plaintiffs contend that Sections 3.2(b) and 11.2(a) of the Operating Agreement are contrary to the 2018 Amendment.  Plaintiffs' contentions are without merit.

Plaintiffs argue that Section 3.2(b) requires Hammond to sign a consent to be bound by the Operating Agreement before he can be admitted as a Member.  However, Section 8.2, not Section 3.2(b), deals with admission of new Members.  Further, the 2018 Amendment was intended to eliminate the redundancy in requiring Members to sign consents as each new investor was already required to execute purchase agreements for Membership Interests. Supplemental Declaration, ¶6.

Section 3.2(b) deals with the requirements of Members.  The language of Section 3.2(b) makes clear that admission comes first, as it states that "Each new (or transferee) Member shall be required to sign a counterpart…".  Thus, pursuant to Section 3.2(b), one must be a Member before they sign any consent to be bound by the Operating Agreement.

Section 11.2 of the Operating Agreement provides that, with certain exceptions, the Operating Agreement may be amended by a written instrument signed by the Members holding a majority interest of the Units.  As Leopold has always been a majority holder, he can unilaterally amend the Operating Agreement.  Plaintiffs argue that Section 11.2(a) applies to restrict Leopold's right to execute the 2018 Amendment.  Contrary to Plaintiffs' contentions, Section 11.2(a) provides that a Member's consent is needed for an amendment "that reduces a Member's Membership Interest when such reduction is not applied proportionally to all other Members".  Accordingly, it

5

only requires a Member's consent for a disproportionate reduction in the amount of that Member's interests, which the 2018 Amendment does not do.

C. **Plaintiffs' Contentions That Corporate Formalities Were Not Met Are Meritless**

Plaintiffs next contend that Pridewear did not comply with various corporate formalities. Plaintiffs' contentions are irrelevant to jurisdiction, inaccurate and lacking evidentiary support.

As an initial matter, whether Pridewear complied with various corporate formalities is not relevant to whether Hammond is a Member. Delaware law allows for great flexibility with respect to membership interests. The Delaware Limited Liability Company Act ("LLC Act") "establishes no formalities that must be observed for the creation and issuance of limited liability company interests." *Zimmerman v. Crothall*, 62 A.3d 676, 693 (Del. Ch. 2013); *see also Wheels Up Partners LLC v. Exclusive Jets, LLC*, 2025 WL 950805 (S.D.N.Y. Mar. 28, 2025).

Regardless, all of Defendants' actions regarding the Amendments were performed in accordance with Delaware law and the Operating Agreement.

As the Manager of Pridewear, Leopold was authorized to execute the 2020 Amendment (which names Hammond as a Member) pursuant to Section 11.2(c) of the Operating Agreement. It provides that the Manager shall be permitted, without Member consent, to update the Schedules to the Operating Agreement to reflect the admission of new Members that have been approved by the Manager. By signing the 2020 Amendment, Leopold clearly approved Hammond's admission as a Member.

Plaintiffs' additional arguments regarding corporate formalities are equally meritless. First, neither Delaware law nor the Operating Agreement (as amended by the 2018 Amendment) require Hammond to sign the Operating Agreement to be admitted as a Member. Section 18-101(9) of the LLC Act provides that an LLC member is bound by the operating agreement whether or not they

6

execute it.  The 2018 Amendment revised Section 8.2 of the Operating Agreement to provide that a person acquiring Membership Interests from Pridewear shall automatically be admitted as a Member.

Contrary to Plaintiffs' contentions, neither Delaware law nor the Operating Agreement require that Hammond receive any certificates evidencing his membership. Plaintiffs have cited no authority to the contrary.

Plaintiffs' apparent contention that Hammond did not comply with the Common Unit and Warrant Purchase Agreement is irrelevant as the parties went forward with the transaction. Accordingly, any noncompliance by Hammond was plainly waived by Pridewear and is irrelevant here.

Lastly, in accordance with Section 5.1 of the Operating Agreement, there was no need for Hammond to vote or participate in Pridewear's management as Leopold was, at all times, the sole Manager and majority owner.  Nevertheless, Hammond did participate in many meetings with Leopold and others about Pridewear. Leopold Declaration, ¶19; Supplemental Declaration, ¶16.

**D.  Plaintiffs Have Not Met The Standard For Jurisdictional Discovery**

As an initial matter, Plaintiffs attempt to confuse the burden of proof for subject matter jurisdiction.  They cite *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) and *REM OA. Holdings LLC v. Northern Gold Holdings LLC*, 2023 WL 6143042, *18 (Del. Ch. Ct. Sept. 20, 2023) for the proposition that Defendants bear the burden.  As is well established, however, *APWU* makes clear that "Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU,* 343 F.3d at 623.

Likewise, a "party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity…A plaintiff is not, however, entitled to

jurisdictional discovery if it cannot show that the requested discovery is likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Molchatsky v. United States*, 778 F.Supp.2d 421, 438 (S.D.N.Y. 2011).  Requests for discovery based on "conclusory and implausible allegations" do not meet the burden for jurisdictional discovery.  *Haber v. U.S.*, 823 F.3d 746, 754 (2d Cir. 2016); *see also Coll. Essay Optimizer, LLC v. Edswell, Inc.*, 2015 WL 5729681, *8 (S.D.N.Y. Sept. 30, 2015) (in denying jurisdictional discovery, Court considered that a dismissal would simply require plaintiff to sue in state court).

In an effort to gain jurisdictional discovery, Plaintiffs raise a host of baseless and irrelevant arguments.  Plaintiffs' contentions that there is "an indicia of fraud" regarding the Amendments are baseless, speculative and insufficient to warrant jurisdictional discovery.  Regardless, as stated above, the Leopold Declarations, and the Declarations of Karvelis, Prensky, Smith, Patapoff and Uria amply demonstrate that Plaintiffs' contentions regarding the Amendments are without merit.

Plaintiffs neither have nor can proffer any discovery that would establish subject matter jurisdiction.  Plaintiffs state that they "will provide a complete list of the subjects and requests they seek for jurisdictional discovery in their letter to the Court, scheduled for the week after Defendants' reply brief is due."  Opposition, p.19.  The letter Plaintiffs refer to, however, is to address the parties' "respective positions on the stay of discovery while Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction is pending".  ECF No. 66.  It is not intended to give Plaintiffs a sur-reply and permit them to withhold identifying the discovery they contend will establish subject matter jurisdiction until after Defendants submit their Reply.

The only jurisdictional discovery Plaintiffs do propose is "to seek contemporaneous communications at the time the 2018 and 2020 amendments to the operating agreement were adopted..." Opposition, p. 19.  This plainly does not demonstrate how discovery would bear on a

8

critical issue for jurisdiction, and amounts to no more than a pointless fishing expedition, particularly given the strong proof Defendants have submitted regarding the Amendments.

Accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

II.  **Pridewear Is A Necessary And Indispensable Party That Cannot Be Dropped To Preserve Diversity Jurisdiction**

Plaintiffs filed this action in Maryland District Court despite a clear New York venue provision. Then, after the action was transferred to this Court, Plaintiffs amended the Complaint to drop one Defendant and to attempt to shore up their subject matter jurisdiction and fraud allegations. Now, Plaintiffs want to drop Pridewear in another effort at diversity jurisdiction.

Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party to preserve diversity jurisdiction provided the nondiverse party is not "indispensable" under Rule 19(b). *CP Solutions v. General Electric Co.*, 553 F.3d 156, 159 (S.D.N.Y. 2009). Whether a party is indispensable involves a two-step test. First, the Court must determine whether the party is "necessary" under Rule 19(a). If the party is necessary, then the Court must determine whether it is "indispensable" under Rule 19(b). *Seagrape Investors LLC v. Tuzman*, 2025 WL 2644138, *3 (S.D.N.Y. Sept. 15 2025).

Plaintiffs' contentions that Pridewear is neither a necessary nor indispensable party are without merit.

A.  **Pridewear Is A Necessary Party**

Even a cursory review of the Amended Complaint demonstrates that Pridewear is a necessary party. Plaintiffs assert five of six claims against Pridewear and the sixth claim states that Leopold tortiously interfered with contracts between Hammond and Pridewear. Count I is a fraud claim against both Defendants. Counts II and III are breach of contract claims against Pridewear for breach of the Promissory Notes and Purchase Agreement. Count IV is another breach

of contract claim against Pridewear.  Count V is a negligent misrepresentation claim against both Defendants.  Count VI is a tortious interference claim alleging Leopold interfered with the Promissory Notes between Hammond and Pridewear.

It is well established that parties to a contract that is the subject of the litigation or in dispute are necessary parties pursuant to Rule 19(a).  *See Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002) ("[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)"); *Baldwin v. Interscope Records, Inc.*, 2021 WL 847976 *5 (S.D.N.Y. March 3, 2021) ("[i]t is well-established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines*, 960 F. Supp. 701, 707 (S.D.N.Y. 1997).

Plaintiffs' contentions that Pridewear is not a necessary party because the three breach of contract claims could be dismissed are without merit.  First, Plaintiffs' contentions are contrary to the above well-established case law that parties to a contract that is the subject of the litigation or are in dispute are necessary parties.  Second, Plaintiffs do not explain what would happen with respect to their other claims, including the tortious interference claim.  Third, if Pridewear were dropped from this action, it would be unable to respond to Plaintiffs' allegations that it was the instrumentality of fraud and protect its interests.  At the same time that Plaintiffs state that Pridewear is "merely a conduit for Leopold's fraud" and that the amendments to its Operating Agreement were fraudulent, it states that it is neither a necessary nor indispensable party and should be dropped from this litigation.  If it were dropped, Pridewear's other Members would be deprived of the opportunity to defend its interests.

**B.  <u>Pridewear Is An Indispensable Party</u>**

Pridewear is also an indispensable party.  First, as noted above, Pridewear is a defendant in five of six claims and an integral party to the one remaining claim for tortious interference.  Both the Promissory Notes and the Purchase Agreement are between Hammond and Pridewear.  Each of these agreements contain provisions that are integral to this dispute including choice of law (Delaware) and venue (New York).  Plaintiffs cite various provisions of these agreements throughout their Opposition and rely on Delaware law throughout their Opposition because of the Delaware choice of law provision in these agreements.  This action is before this Court because of the New York venue provision in the Purchase Agreement.

Second, Plaintiffs' attempt to disregard Pridewear as a separate entity and their allegations that it is "a shell company" and "merely the conduit for Leopold's fraud" are frivolous.  Opposition, pp. 20-21, 23.  Plaintiffs assert no basis or evidence whatsoever to support their allegations of fraud, which are based purely on speculation and claims that "projections" or "predictions" did not pan out.  *See* Opposition, pp. 11-12, 21-23.  Plaintiffs' contentions that Pridewear is "a shell company" are equally baseless. Opposition, p. 23.  To the contrary, Pridewear is an operating company with ongoing sales and 21 Members, many of whom are highly successful businesspersons, none of whom have made allegations of wrongdoing.  Supplemental Declaration, ¶2 and Ex. D.

Third, if Pridewear were dropped, it would be deprived of the opportunity to respond to Plaintiffs' allegations that it was the instrumentality of fraud and to defend its separate interests. As noted, it has 20 members other than Leopold.

Fourth, nothing would prevent Plaintiffs from subsequently filing a state court action against Pridewear after it had been tried in absentia.  Plaintiffs would be highly incentivized to do so if Pridewear's business improves.

11

Lastly, there would be no prejudice to Plaintiffs by bringing this action in state court. Most of the "year of litigation" was spent in the Maryland District Court, despite a clear venue provision mandating litigation in New York. The transfer to this Court, which Plaintiffs strenuously opposed with multiple briefs, did not occur until December 2, 2025. Then Plaintiffs amended their Complaint to drop a defendant and revise their allegations in an effort to shore up their subject matter jurisdiction and fraud allegation. There has been no discovery in either Court. *See*, *e.g.*, *Seagrape*, *supra*, 2025 WL 2644138 at *6 ("Nor would dismissal cause great harm to the efficient administration of justice, given that the parties have not yet conducted any discovery in this action.")

As Plaintiffs are now requesting permission to amend their Amended Complaint to drop Pridewear, it would be more efficient for them refile this action in state court, which would dispose of all potential claims against both Leopold and Pridewear, and eliminate the risk of duplicative litigation.

Plaintiffs' attempt to distinguish *Seagrape* is disingenuous. As clearly set forth above and in *Seagrape*, in order for a party to be necessary and indispensable, a party does not need to be a party to a contract that the plaintiff seeks to cancel. Rather, it simply must be a party to a contract that is a subject of the litigation or in dispute.

Regardless, given Plaintiffs' allegations that Pridewear was the instrumentality of Leopold's fraud, Plaintiffs have placed Pridewear's contracts directly in question, subjecting them to being voided. *See* Opposition, pp. 20-21 ("Pridewear was simply the conduit through which the fraud occurred"). *See Seagrape*, 2025 WL 2644138 at *5.

In sum, Plaintiffs' contentions that Pridewear is not a necessary and indispensable party are without merit.

## **CONCLUSION**

For the above reasons and those in Defendants' Brief, Defendants respectfully request that

their motion to dismiss for lack of subject matter jurisdiction be granted.

Dated:  New York, NY
        March 25, 2026

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**


By:/s/ John M. Bradham
        John M. Bradham
        Peter B. Katzman
400 Madison Avenue, Suite 17D
New York, New York 10017
Tel. No.: (212) 695-8050

***Attorneys for Defendants Ian S. Leopold
and Pridewear LLC***

13

## CERTIFICATE OF COMPLIANCE

I am an attorney with Morea Schwartz Bradham Friedman & Brown LLP, counsel for Defendants Ian S. Leopold and Pridewear LLC.  I am a member in good standing of the Bar of the State of New York and am admitted to practice in this Court.  I hereby certify that the word count of the Reply Memorandum of Law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare the Reply Memorandum of Law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 3,499 words.

Dated: March 25, 2026
        New York, New York

                                /s/ Peter B. Katzman
                                Peter B. Katzman